873 So.2d 198 (2003)
FUNLINER OF ALABAMA, L.L.C., et al.
v.
Fred PICKARD and Lewis Dowdell.
1012411.
Supreme Court of Alabama.
May 23, 2003.
Rehearing Denied August 22, 2003.
*201 John M. Bolton III of Sasser, Littleton & Stidham, P.C., Montgomery; and Ralph L. Armstrong, Bessemer, for appellants.
Robert B. Roden and M. Shane Lucado of Shelby, Roden & Cartee, P.C., Birmingham, for appellees.
STUART, Justice.
Funliner of Alabama, L.L.C.; John Abbott; Abbott Amusement Co., Inc.; Alabama Amusements; Barry Kelly d/b/a Movie Time Arcade; Darrell Westfaul; Dixie Novelty Company, Inc.; Franco Novelty, L.L.C.; Montgomery 76 Auto Truck Plaza; Kevin Sharp Enterprises, Inc.; Willie Vines; and Vines Vending, Inc., the defendants in an action pending in the Jefferson Circuit Court (hereinafter collectively referred to as "the defendants") appeal[1] from the August 27, 2002, orders of the Jefferson Circuit Court certifying a class of plaintiffs and certifying two classes of defendants in this action.[2] The defendants also appeal from the trial *202 court's issuance of a preliminary injunction.
We reverse the trial court's certification of the plaintiff class and its certification of the defendant classes. We also dissolve the preliminary injunction issued by the trial court. We remand this action for further proceedings.

I.

Background
The defendants may be categorized into two groups; each group is engaged in a different but related business. Both groups are involved with video-gaming machines. The first group of defendants consists of the owners of arcades in which there are 20 or more video-gaming machines for the public's use. If a player wins a game at one of these arcades, the player wins a merchandise certificate valued at approximately $5. Funliner of Alabama, L.L.C., is a member of this group; this group is hereinafter referred to as the "arcade defendant class."
The second group consists of entities that lease the video-gaming machines to certain businesses throughout Alabama; these businesses include, among others, retail establishments, truck stops, bars, convenience stores, bowling alleys, and lounges. Alabama Amusements, Dixie Novelty Company, Inc., Franco Novelty, L.L.C., and Vines Vending, Inc., are members of this group, which is hereinafter referred to as the "leasing defendant class."
In November 1999, Fred Pickard and Lewis Dowdell sued the defendants as a result of these gaming activities. Pickard and Dowdell alleged public nuisance, violations of § 8-1-150, Ala.Code 1975, unjust enrichment or money had and received, and civil conspiracy. They seek to recover, for each and every claim asserted, compensatory and punitive damages,[3] prejudgment and postjudgment interest, court costs, declaratory relief, injunctive relief, imposition of a constructive trust to reimburse the plaintiffs for the money they lost in playing the video-gaming machines, attorney fees, and any other legal and equitable relief deemed to be proper.
Pickard and Dowdell moved the trial court to certify as a class "all persons who spent money playing the video gaming machines owned or operated by any of the named Defendants in any business establishment located in Alabama from November 3, 1993, to the present." They also requested that the trial court certify the two groups of defendantsthe arcade defendant class and the leasing defendant classas two separate classes of similarly situated defendants.
On March 15, 2002, the trial court conducted a hearing on Pickard and Dowdell's motion for class certification.[4] At the hearing, Fred Pickard, a practicing attorney, testified that sometime during the summer of 2000, he spent between $12 and $15 playing two to four video-gaming machines at an arcade located in either Lipscomb or Brighton. He testified that he won "two or three" redemption certificates with a value of "probably about $4.00 total." He also testified that he visited the arcade a second time and again played the video-gaming machines but that he does not remember the details of his second visit. He said that he did not spend as much money on his second visit to the *203 arcade as he spent on his first visit. He testified that he does not know exactly how much money he lost on his visits to the arcade.
Pickard testified that there is no written record of his visits to the arcades and that, while there, he saw no logbook that would identify any of the visitors to the arcade. Pickard indicated that he has no personal knowledge of how to identify the individuals who have played the video-gaming machines at the arcade.
Pickard testified that he filed this action because, based on conversations he had had with others, he thought the video-gaming machines were cheating people. At the class-certification hearing, he denied that he had already decided that the video-gaming machines were illegal when he played them.
However, on cross-examination, Pickard was questioned about his deposition testimony. He testified during his deposition that, before playing the gaming machines, he had overheard conversations discussing the legality of these gaming machines when he was at the courthouse on other business. He stated that he had also overheard conversations about a statute that related to gambling and that he had personally researched the issue whether the video-gaming machines were illegal under that statute. Pickard testified that he had concluded that the games might be illegal under Alabama law. He testified that he then played the video-gaming machines. He admitted that he reached his conclusion that the machines were possibly illegal before he played the gaming machines and that his conclusion that the games might be illegal did not change after he played the games.
Pickard also testified during his deposition that he first played a video-gaming machine "out of curiosity." He testified that one day before he ever played a video-gaming machine he was on his way to the courthouse in Cullman or Jasper when he stopped at a gasoline station. While there, he saw an older woman playing a video-gaming machine. Three and one-half hours later, when he returned to the gasoline station, she was still playing the same machine. He testified that he "just wanted to see what they were doing really. I felt like it might be illegal."
Pickard also testified that he has previously played "slot machines" in Biloxi, Mississippi. He testified that the only difference between the video-gaming machines in Alabama and the slot machines he played in Biloxi was that the video-gaming machine "paid out a coupon" and the slot machine "was supposed to pay out cash or coins."
Plaintiff Lewis Dowdell has a fourth-grade education. Although he did not testify at the class-certification hearing, his deposition was submitted for the court's consideration. He testified in his deposition that, in November or December 1999, he visited an unidentified arcade and spent approximately $42 playing a video-gaming machine. He won two certificates valued at $5 each.
Dowdell stated that he did not go back to the arcade because he heard from a friend and from television reports that the video-gaming machines were illegal. These reports of the illegality of the machines prompted him to consult a lawyer. Dowdell testified that he never would have played the video-gaming machine if he had known it was illegal. He testified that he did not know the amount of his damages, and other than his redemption certificates, he had no receipt or other documentation to prove that he had actually played a video-gaming machine.
Dowdell admitted that he has visited Biloxi with friends, that he has visited a *204 dog-racing track, and, that he has "shot craps" with friends in alleyways. He also admitted that he has been convicted of the following felonies: burglary, robbery, carrying a concealed weapon, and breaking and entering. He testified that during one of his periods of confinement in prison on those convictions, he escaped while he was assigned to a road camp.
Robert D. Sertell testified at the class-certification hearing as an expert for the plaintiffs. He serves as the chairman of a firm that specializes in gaming and gambling machinery. He consults with and trains agencies that regulate the gaming industry, law-enforcement agencies, and manufacturers of gaming devices.
Sertell testified that he traveled to 11 counties in Alabama and visited various arcades to observe and play the video-gaming machines. He stated that he saw at least 1,000 video-gaming machines in use in Alabama. He played several video-gaming machines at various arcades and while at those arcades he spoke with patrons. He does not know how much money he lost or won while playing; he did not have any receipt or record to document his losses; and he did not have any receipt or record to document his visits or to prove that he had played the video-gaming machines.
He testified that the video-gaming machines used in Alabama are all games of chance and that a player's skill has no impact on whether a player wins or loses. He also stated that unlike the gaming machines approved for use in Nevada, New Jersey, or Mississippi, the machines he found in Alabama (which he referred to as "gray-area" or "gray-market" machines) are not random in their operation. Sertell testified that the gray-market machines are preset to pay winnings at a set percentage and that the owner of the machine controls that percentage by manipulating a "dip switch" located inside the machine. He referred to this manipulation as "cheating" and testified that for this reason the video-gaming machines he observed and played in Alabama would not be approved for use in jurisdictions in which the gaming industry is supervised and regulated.
Sertell testified that, although there are many variations on the type of video-gaming machine, all of the machines operate on the principles of consideration (the player's money or token), a chance (the odds of winning), and a reward (the redemption certificate or ticket). Sertell testified that a "gambling device" or a "game of chance" is any game that has those three components: consideration, chance, and reward. Sertell testified that even some games found in children's amusement arcades fall within this definition of "gambling devices." Therefore, according to Sertell, children who have played those games at such establishments have engaged in illegal gambling and are therefore putative members of the plaintiff class.
Sertell also testified that, in his opinion, the individuals he spoke to who played these video-gaming machines did so under the impression that the machines were legal. He agreed that the players could have formed this belief for numerous reasons and that each player would have to be questioned in order to determine his or her basis for believing that video-gaming machines were legal.
On cross-examination, Sertell testified that he did not know the source of the video-gaming machine offered as an exhibit at the hearing and he did not know if it belonged to or was leased by one of the defendants. He also admitted that during his visits to the arcades, he did not actually open any of the video-gaming machines to examine the computer boards, the internal workings, or the dip switches. His testimony *205 appeared to be based on information obtained from tests and studies in which he had been previously involved and that did not involve the video-gaming machines at issue in this action.
At the conclusion of the class-certification hearing, the trial judge indicated that, although the plaintiffs had filed a stipulation of dismissal as to a certain group of defendants, the trial judge, on his own initiative, decided to consult with a law firm not involved in the litigation to determine if a civil claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") should be brought in this action. The trial judge indicated that, if a RICO claim was appropriate, that claim would encompass the group of defendants the plaintiffs sought to dismiss. The trial judge indicated that he was unwilling to dismiss those defendants until he obtained input from the outside law firm.
The trial judge's following comments, although unclear, could be construed to mean that he did not intend to certify any class (as to any of the plaintiffs or any of the defendants) until he received the additional information from the outside law firm:
"The Court: Well, we are going toI think it is up to the Court to decide whether ... to let them out or not let them out as to whether or not it is going to prejudice the rest of the class or not prejudice the rest of the class whether or not they ought to be left in here. We are still going to hold on to it for right now.
"What we are going to do is this, we are going to do some more studying on that part of it. In order to study on it, I am going to have somebody look at it. I am not going to certify them right now. And I am not going to dismiss them right now.
"What I am going to do [is] this: I am going to tell you that I am going to have some folks to look at this and see whether or not all of this may tie in together as to whether or not there was a civil RICO violationstate, not a federal, but a state. If it is, then that would be a class. I am not going to involve y'all in that. It may not be anything. Y'all may be out. I don't know. I don't know that yet. I can't tell you.
"Mr. Coppage [counsel for one of the defendants]: Do we have an opportunity to make like a summation?
"The Court: Yes, sir. I am going to let y'all put something on the record. I am going to be fair. [It] would not be right for y'all not to say anything. But what I am going to do is, I am sort of previewing what I am going to do. That way you can put some stuff on the record. That way you will know ahead of time what I am thinking about.
". . . .
"The Court: Do y'all want to argue anything?
"Mr. Armstrong [counsel for one of the defendants]: I don't think there is need, is it?
"The Court: Not right now. I am just glad to have you up here.
"Mr. Bolton [counsel for one of the defendants]: Your Honor, if I understand the Court correctly, we are going to reconvene after you have had the opportunity to confer with Mobile counsel, then we will make our arguments at that time.
"The Court: That will be great. I don't know about these other [defendants], now. You may want to check with those and see what happened to them.
"Mr. Bolton: I don't represent any of them, Judge."
*206 However, the trial court did not hold another hearing and the parties were not reconvened. On August 27, 2002, the trial court issued an order certifying the following plaintiff class pursuant to Rule 23(b)(1), (b)(2), and (b)(3), Ala. R. Civ. P.:
"A class of Alabama citizens that (1) spent money playing any video gaming machines, (2) that was owned and/or operated by any of the Named Defendants or any members of the Proposed Defendant Classes, (3) in any business establishment located in the State of Alabama (4) from November 3, 1993, to the present."[5]
On that same date, the trial court also certified the following defendant classes: (1) the proposed arcade defendant class, and (2) the proposed leasing defendant class. The trial court defined these classes as follows:
"(1) Proposed Arcade Defendant Classindividuals or entities that own or operate arcades situated in Alabama where there are large amounts (i.e. twenty plus (20+)) of video gaming machines available for use by the Alabama public and where a winner wins redemption certificates in $5.00 increments which can be exchanged for merchandise sold by the Certificate Defendants' various shopping centers.
"(2) Proposed Leasing Defendant Classindividuals or entities that lease video gaming machines to small Alabama businesses, including (but not limited to) truck stops, adult bars, convenience stores, bowling alleys, lounges, retail establishments, and quick markets where a winner wins redemption certificates in $5.00 increments which can be exchanged for merchandise in that particular establishment."
The trial court also issued a preliminary injunction, pursuant to Rule 65(d)(2), Ala. R. Civ. P., enjoining all members of the defendant classes from operating any video-gaming machines within the State of Alabama until the completion of a trial or until all of the plaintiffs' claims were otherwise resolved.
The defendants appeal from the August 27, 2002, orders certifying the plaintiff class and the defendant classes.

II.

Standard of Review
This Court will apply "an abuse-of-discretion standard of review to a trial court's class-certification order, but we will review de novo the question whether the trial court applied the correct legal standard in reaching its decision." Compass Bank v. Snow, 823 So.2d 667, 671 (Ala. 2001). We further stated in Compass Bank:
"[A]n abuse of discretion in certifying a class action may be predicated upon a showing by the party seeking to have the class-certification order set aside that `the party seeking class certification failed to carry the burden of producing sufficient evidence to satisfy the requirements of Rule 23.' Ex parte Green Tree Fin. Corp., 684 So.2d 1302, 1307 (Ala. 1996). Thus, we must consider the sufficiency of the evidence submitted by the plaintiff[s]."
Compass Bank, 823 So.2d at 672. We also apply "an abuse-of-discretion standard" to our review of a trial court's order granting *207 a preliminary injunction. Blaylock v. Cary, 709 So.2d 1128 (Ala.1997); Alabama Power Co. v. Drummond, 559 So.2d 158 (Ala.1990).

III.

The Proposed Plaintiff Class Rule 23(b)(1)
The trial court certified the plaintiff class pursuant to Rule 23(b)(1), Ala. R. Civ. P.,[6] which allows certification of a class if the prerequisites of Rule 23(a) have been met and if
"(1) the prosecution of separate actions by or against individual members of the class would create a risk of
"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of the conduct for the party opposing the class...."
However, federal courts have recognized that certification under this subsection of the Federal Rules of Civil Procedure is inappropriate when the plaintiffs seek monetary damages.[7] For example, in In re Dennis Greenman Securities Litigation, 829 F.2d 1539 (11th Cir.1987), the United States Court of Appeals for the Eleventh Circuit agreed with numerous authorities that certification under Rule 23(b)(1)(A) does not apply to actions seeking compensatory damages but is for actions in which only declaratory or injunctive relief is sought.[8] See 829 F.2d at 1545 ("Underlying is the concern that if compensatory damage actions can be certified under Rule 23(b)(1)(A), [Fed.R.Civ.P.,] then all actions could be certified under the section, thereby making all other sub-sections of Rule 23 meaningless, particularly Rule 23(b)(3).").
There is little dispute that the plaintiffs in this case seek monetary damages, including compensatory damages. In their sixth amended complaint, they specifically demanded compensatory and punitive damages under each and every cause of action stated. (See note 3.) The plaintiffs have also indicated to the trial court that they intend to seek damages for emotional distress. Accordingly, we find that the trial court exceeded its discretion in certifying the plaintiffs' claims for class treatment under Rule 23(b)(1)(A), Ala. R. Civ. P.

Rule 23(b)(2)
The trial court also certified the plaintiffs' claims for class treatment under Rule 23(b)(2), Ala. R. Civ. P., which allows certification of a class if the prerequisites of Rule 23(a) are met and "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive *208 relief or corresponding declaratory relief with respect to the class as a whole."
This Court has previously considered whether a class may be certified under this subdivision when the plaintiffs seek monetary damages. In Compass Bank v. Snow, supra, the plaintiffs sued Compass Bank, alleging breach of contract, conversion, and fraudulent suppression arising out of the bank's practice of posting checks to the plaintiffs' accounts in a particular order. The plaintiffs also sought a declaratory judgment and a permanent injunction preventing the bank from continuing to post checks in the manner in which it had been posting them. The trial court certified the plaintiff class pursuant to Rule 23(b)(2) and (b)(3).
This Court in Compass Bank stated: "As a general rule, certification of a class pursuant to Rule 23(b)(2) is improper if the primary relief sought is money damages." 823 So.2d at 678. In determining that the plaintiffs' claims for monetary damages predominated over their claims for declaratory and injunctive relief, the Court followed the rationale of the United States Court of Appeals for the Fifth Circuit in Allison v. Citgo Petroleum Corp., 151 F.3d 402 (5th Cir.1998).
In Allison, the Fifth Circuit stated:
"[M]onetary relief `predominates' under Rule 23(b)(2)[, Fed.R.Civ.P.,] when its presence in the litigation suggests that the procedural safeguards of notice and opt-out are necessary, that is, when the monetary relief being sought is less of a group remedy and instead depends more on the varying circumstances and merits of each potential class member's case....
". . . .
"Consistent with this analysis, we reach the following holding: monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief. By incidental, we mean damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief. See Fed.R.Civ.P. 23(b)(2) (referring only to relief appropriate `with respect to the class as a whole'). Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established. That is, the recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief. Moreover, such damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions."
151 F.3d at 414-15 (citations and footnotes omitted). See also Murray v. Auslander, 244 F.3d 807 (11th Cir.2001) (class certification under Rule 23(b)(2), Fed.R.Civ.P., was unavailable where the plaintiff class sought monetary damages, because the claim for monetary damages was not incidental to the claims for injunctive and declaratory relief).
We conclude that the plaintiffs' claims for money damages in this action predominate over their claims for injunctive relief and that those claims do not flow out of a *209 group injury. The plaintiffs' claim of public nuisance requires them to establish that they have sustained a special injury that is different from the injury suffered by the public at large. See, e.g., Russell Corp. v. Sullivan, 790 So.2d 940, 951 (Ala.2001), and § 6-5-123, Ala.Code 1975. The plaintiffs allege that they have lost money and that this loss is in addition to that suffered by the public generally. As damages, they seek to recover the moneys they lost playing the video-gaming machines owned or leased by the defendants and they seek damages for emotional distress. This claim is obviously one for money damages. Moreover, in order to prevail on this claim, the plaintiffs must establish, on an individual basis, the amount of their damages.
The plaintiffs also claim that the defendants have violated § 8-1-150, Ala.Code 1975.[9] In support of this claim, the plaintiffs allege that they entered into a wagering contract with the defendants and that, as a result, they lost money. They seek to recover the moneys they lost playing the video-gaming machines owned or leased by the defendants. This is clearly a claim to recover moneys, and in order to recover the plaintiffs must establish, on an individual basis, the amount they lost to the defendants.
The plaintiffs also allege a claim of unjust enrichment or money had and received. To prevail on this claim, the plaintiffs must establish that the defendants hold money that, in equity and good conscience, belongs to the plaintiffs, or that the defendants hold money that was improperly paid to the defendants because of mistake or fraud. See Mitchell v. H & R Block, Inc., 783 So.2d 812, 817 (Ala.2000). As damages, the plaintiffs seek to recover the money they claim was unjustly paid to the defendants. Again, the plaintiffs seek to recover monetary damages and must establish their damages on an individual basis.
Accordingly, we conclude that the plaintiffs' claims for monetary damages predominate over their claims for injunctive relief and that those claims depend upon a showing of individual damages rather than upon a showing of damages suffered by the class as a whole. For these reasons, we conclude that the trial court improperly certified the plaintiff class pursuant to Rule 23(b)(2).

Rule 23(b)(3)
Because the plaintiffs seek to recover monetary damages under each and every one of their claims, Rule 23(b)(3), Ala. R. Civ. P., appears at first blush to be the appropriate subdivision under which to certify the plaintiff class. Although it is somewhat unclear from the trial court's orders, we will presume for purposes of this appeal that the trial court intended to certify the plaintiff class under subdivision (b)(3) of Rule 23.
To obtain certification of a class under Rule 23(b)(3), a plaintiff must establish the prerequisites of Rule 23(a), as well as those set forth in 23(b)(3). Subdivision (b)(3) allows class certification if the prerequisites of Rule 23(a) are met and
"the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other *210 available methods for the fair and efficient adjudication of the controversy."
In the recent case of Reynolds Metals Co., supra, we addressed this predominance test and determined that the plaintiffs in that case had not met their burden of proof in establishing that questions of law or fact common to the members of the class predominated over individual issues. The Court in Reynolds Metals stated:
"The predominance requirement `tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' It is `far more demanding' than the commonality requirement of Rule 23(a). In deciding whether common questions of fact or law predominate, a court must examine each plaintiff's cause of action and consider `what value the resolution of the class-wide issue will have in each class member's underlying cause of action.'"
825 So.2d at 104 (citations omitted). Thus, we review the elements of each claim of the plaintiffs to determine whether individual issues will predominate over common questions of law or fact.
The plaintiffs first allege public nuisance. To assert a claim of public nuisance, the plaintiffs must have sustained an injury different from and in addition to the one suffered by the public at large. See, e.g., Russell Corp v. Sullivan, supra, and § 6-5-123, Ala.Code 1975. The plaintiffs allege that they have sustained a monetary loss and that this loss is different from and in addition to the injury suffered by the public generally. As damages, the plaintiffs seek to recover the moneys they lost playing the video-gaming machines owned or leased by the defendants.
However, in order to recover under this public-nuisance theory, each plaintiff will be required to establish that he or she played the video-gaming machines, as well as the amount of his or her damages. We note that, based on the testimony before the trial court, there appears to be little, if any, evidence available to establish objectively who has played the video-gaming machines owned or leased by the defendants or when those persons might have played the machines. There also appears to be little documentation, if any, to establish the amount of the players' claimed losses. Therefore, resolution of these issues, if they can be resolved at all, will require individual testimony.
Moreover, the plaintiffs have indicated to the trial court that they intend to seek damages for emotional distress under their public-nuisance claim. Under Alabama law, recovery of damages for emotional distress requires individualized proof. See Kmart Corp. v. Kyles, 723 So.2d 572 (Ala.1998). For this reason, class certification of claims seeking damages for emotional distress is inappropriate. See Allison v. Citgo Petroleum Corp., 151 F.3d at 417.
The plaintiffs also seek to recover under § 8-1-150, Ala.Code 1975, which provides, in pertinent part:
"(a) All contracts founded in whole or in part on a gambling consideration are void. Any person who has paid any money or delivered any thing of value lost upon any game or wager may recover such money, thing, or its value by an action commenced within six months from the time of such payment or delivery."
In support of this claim, the plaintiffs allege that they entered into a wagering contract with the defendants and that they lost money as a result of that contract. However, in order to recover under § 8-1-150, the plaintiffs must establish that they, in fact, filed this action within six months of their playing the video-gaming machines at which they suffered the losses they are *211 seeking to recover. The plaintiffs must also establish that they lost money and the amount of their losses. See Bryant v. Starkey, 252 Ala. 21, 39 So.2d 291 (Ala. 1949); § 8-1-150, Ala.Code 1975, and cases cited in the annotations to that Code section. Because of the evidentiary problems already noted, numerous individualized inquiries will be required to establish the plaintiffs' claim under § 8-1-150.
The plaintiffs also allege unjust enrichment or money had and received. To prevail on this claim, the plaintiffs will have to establish that the defendants hold money that, in equity and good conscience, belongs to the plaintiffs, or that was improperly paid to the defendants because of mistake or fraud. See Mitchell v. H & R Block, Inc., 783 So.2d at 817. As we have already noted, in order to prevail on this theory, the plaintiffs will have to establish that they paid money to the defendants, either by mistake or fraud, that, in equity or good conscience, should be returned to the plaintiffs.
This theory of recovery, therefore, requires individualized inquiry into the state of mind of each plaintiff. For example, in order to determine whether each putative member of the plaintiff class paid money by mistake or fraud, the trial court will have to determine whether he or she believed that the gaming activities were illegal and, if so, whether he or she intended to engage in an illegal activity. Moreover, the trial court would then have to determine, on an individual basis, the amount each plaintiff paid to which defendants. Numerous individualized inquiries are required, which makes this claim inappropriate for class certification. See, e.g., Reynolds Metals Co., 825 So.2d at 108 (concluding that the unjust-enrichment claim in that case was inappropriate for class certification because of the predominance of individualized issues of proof).
Finally, the plaintiffs allege that the defendants have committed a civil conspiracy. The plaintiffs allege that the defendants have conspired to advance illegal gambling activities in an effort to profit illegally by causing the plaintiffs unknowingly to engage in unlawful conduct. A civil conspiracy is not an independent cause of action. Drill Parts & Serv. Co. v. Joy Mfg. Co., 619 So.2d 1280, 1290 (Ala. 1993). Because none of the plaintiffs' other claims is appropriate for class certification, we must also decline to certify their civil-conspiracy claim for class treatment. See Millett v. Atlantic Richfield Co., (Ms. Civ.A.CV-98-555, March 2, 2000) (not reported in A.2d), appeal dismissed, 760 A.2d 250 (Me.2000), in which that court stated:
"Having found that plaintiffs' [other] claims ... are not suitable for class certification, this court must also decline to certify this action on plaintiffs' claim of civil conspiracy. [A] defendant cannot be held liable for civil conspiracy absent the commission of some other independently recognized tort. Therefore, plaintiffs' claim for civil conspiracy is not appropriate for class certification because this court has found that none of their other claims for tort liability are appropriate for certification."
(Citations omitted.)
Resolution of the plaintiffs' claims depends upon a large number of individualized issues. We conclude that the number of individual issues present in this action predominate over the questions of law or fact common to the class members. Such a case is not appropriate for class certification under Rule 23(b)(3).

IV.

The Proposed Defendant Classes
The trial court certified this action for bilateral class treatment. In addition to *212 certifying the plaintiffs' class, the trial court also certified two defendant classes: the proposed arcade defendant class and the proposed leasing defendant class.
Although this Court has never had occasion to address the propriety of an action in which a defendant class is certified, federal courts have recognized that the language of Rule 23, Fed.R.Civ.P., authorizes defendant class actions. See 7A Charles Alan Wright et al., Federal Practice & Procedure § 1770 (2002). A proposed defendant class must meet the same prerequisites identified in Rule 23(a)numerosity, commonality of questions of law or fact, typicality, and adequacy of representationand must meet the requirements of one of the subdivisions set forth in Rule 23(b). The trial court purported to certify these two defendant classes pursuant to Rule 23(b)(1)(A), (b)(2), and (b)(3), Ala. R. Civ. P.

Rule 23(a)
In addressing the typicality requirement of Rule 23(a), the trial court's certification order stated:
"Defendant class actions focus on typicality of defenses rather than the typicality of claims. Newberg [on Class Actions], § 4.45, p. 4-179. The rule does not require that each plaintiff in the Plaintiff Class have a cause of action against each defendant in the defendant class, particularly when the suit seeks injunctive relief, as long as there is a juridical link between defendants. Where a `juridical link' exists, courts find typicality among the members of the defendant classeseven though the Representative Plaintiffs were injured by the conduct of a few (or possibly one) of the members of the defendant class as long as the `defendants [are] so closely related that they should be treated substantially as a single unit.'"
We cannot accept the trial court's statement as a proper statement of the law on the certification of defendant class actions, particularly as to the application of the juridical-link exception to the typicality requirement of Rule 23(a).
Courts have recognized that certification of defendant class actions give rise to certain due-process concerns not found in plaintiff class actions. In In re Gap Stores Securities Litigation, 79 F.R.D. 283 (N.D.Cal.1978), the District Court for the Northern District of California stated:
"Commentators have frequently criticized the potential for inadequate representation of defendant classes....
". . . .
"More disquieting than the potential for inadequate representation is the [f]act of representative adjudication itself. In theory there may be no legitimate distinction between a judgment eliminating an absent class member's monetary claim and one ordering an absent class member to pay, but in practice people respond quite differently to lost claims as opposed to new-found obligations. Two authors, Peter Parsons and Kenneth Starr, [Environmental Litigation and Defendant Class Actions: the Unrealized Viability of Rule 23, 4 Envtl. L.Q. 881 (1975),] have reviewed the use of defendant class actions in environmental litigation and have carefully explored the due process problems posed by defendant class adjudications. They have observed:
"`The basic constitutional dilemma of defendant class actions arises out of the due process rights of absent members of the defendant class. Fundamental to due process is the notion that the authoritative determination of a personal liability, obligation or right of a defendant requires the court's in personam jurisdiction over that party.
*213 "`The other horn of the dilemma grows from the class action concept that in personam jurisdiction over all class members is not mandatory. Imposing such a requirement would completely undercut the broad purposes of the class action devicerequiring personal jurisdiction over all of the class members would in effect destroy the class action concept since by definition there could be no "absent" class members. All class members would have to be named and be before the court as a prerequisite to the prosecution of the action. This tension between the due process requirements and the nature of the class action has been resolved for Plaintiff class actions by requiring that the designated class representatives [a]dequately represent the interests of the entire class. If the named parties are effective representatives of the broader class, absent members are viewed as vicariously present and thus afforded their day in court.' Parsons & Starr at 888-89.
"The fiction of vicarious presence may be justified in plaintiff class actions, the authors explain, where `many if not all absent members of a plaintiff class would never enjoy a day in court but for the class action,' and `while technically lacking a day in court' they `are compensated by free, effective representation and the possibility of a windfall recovery in a suit they might never have brought.' Id. at 892. The same fiction may not be justified in defendant class actions where, `no defendant class member will be effectively "deprived" of his day in court by dismissal or limitation of the defendant class action,' Id., since most defendants seek to eliminate such days in court. Similarly, `(a)ny presumed advantage inuring to the absent defendant from the elimination or reduction of attorney's fees is outweighed by being thrust into the litigation at all, or, if suit was inevitable, by loss of control of the litigation resulting from not having been designated a class representative. Id.
". . . .
"... [D]efendant classes are seldom certified. They are most commonly found in patent infringement cases or in suits against local public officials challenging the validity of state laws. But, attempts to certify defendant classes in antitrust cases have been generally unsuccessful, as have reported attempts to certify defendant classes in securities litigation.
"One apparent difficulty with defendant class actions is determining how to handle individual defenses. Unlike plaintiff class actions, successful defendant class actions traditionally have been limited to resolution of issues perfectly common to all class members."
79 F.R.D. at 290-93 (citations and footnotes omitted).
The federal district court in In re Gap went on to discuss three cases from the Ninth Judicial Circuit that illustrate the "common theme of discomfort" experienced by courts attempting to certify bilateral class actions. See In re Gap, 79 F.R.D. at 293. The court noted that, in La Mar v. H & B Novelty & Loan Co., 489 F.2d 461 (9th Cir.1973), the United States Court of Appeals for the Ninth Circuit addressed the issue "`whether a plaintiff having a cause of action against a single defendant can institute a class action against a single defendant [a]nd an unrelated group of defendants who have engaged in conduct closely similar to that of the single defendant on behalf of all those injured by all the defendants sought to be included in the defendant class.'" In re Gap, 79 F.R.D. at 293 (quoting La Mar, *214 489 F.2d at 462). According to the district court:
"`[T]ypicality is lacking when the representative plaintiff's cause of action is against a defendant unrelated to the defendants against whom the cause of action of the members of the class lies.' [La Mar,] 489 F.2d at 465. Similarly, the [La Mar ] court expressed the view that a plaintiff who has no cause of action against a particular defendant cannot fairly and adequately protect the interests of the class members who do. 489 F.2d at 466. The single exception envisioned by the court to the blanket rule that each named plaintiff must have a cause of action against every member of the defendant class involved cases where the defendants were related by law or conspiracy."
In re Gap, 79 F.R.D. at 293.[10]
According to the federal district court in In re Gap, the Ninth Circuit Court of Appeals next addressed just such an alleged conspiracy. In In re Hotel Telephone Charges, 500 F.2d 86 (9th Cir.1974), a plaintiff class alleged that numerous hotel chains and individual hotels had engaged in a conspiracy and had violated federal antitrust laws by adding telephone surcharges to their room rates. The plaintiffs sought certification of a defendant class.
Despite the conspiracy exception to the typicality requirement of Rule 23(a) noted in La Mar, the Ninth Circuit Court of Appeals in In Re Hotel Telephone Charges refused to certify the defendant class because individual questions predominated over any common questions raised by the alleged conspiracy:
"`In order substantially to establish each hotel's involvement in a conspiracy to violate the antitrust laws, participation would be a requisite element of proof. Furthermore, since the surcharges varied from hotel to hotel, the amount of each defendant's surcharge would necessarily require individual treatment, as would the period in which each hotel's surcharge was in effect.... After the basis of computing damages had been individually determined for each defendant, each member of the class seeking recovery would then be required to prove that he patronized the hotel while the surcharge was in effect and that he absorbed the cost of the surcharge. Furthermore, it would then be necessary to compute the amount of damages due the class member.... [T]his suit raises far too many individual questions to qualify for class action treatment.'"
In re Gap, 79 F.R.D. at 294 (quoting In re Hotel Telephone Charges, 500 F.2d at 89).
The court in In re Gap then turned to the final case in this series of decisions by the Ninth Circuit Court of Appeals: Kline v. Coldwell, Banker & Co., 508 F.2d 226 (9th Cir.1974). The defendants in that case were all members of the Los Angeles Realty Board, its several divisions, and 32 individual real estate brokers. The plaintiff class consisted of all sellers of residential real estate in Los Angeles County, California, during the four-year period prior to the filing of the action. The plaintiff class alleged that the realty board had recommended and distributed a brokerage commission schedule to its members and that the members ratified and adhered to that recommendation. The plaintiffs alleged *215 that these acts violated the federal antitrust laws.
The Kline court refused to certify the defendant class, rejecting the plaintiffs' claim that individualized proof would not be required and concluding that individualized inquiries predominated over common questions of law or fact. The Ninth Circuit Court of Appeals also expressed concern over the unfair burden class certification would place on members of the putative defendant class, in light of the provisions of the antitrust statute allowing treble damages and in light of the plaintiffs' request that the defendants be jointly and severally liable. In re Gap, 79 F.R.D. at 293, citing Kline, 508 F.2d at 235.
The federal district court in In re Gap summarized these cases, stating:
"When read together, La Mar, Hotel Telephone Charges and Kline set forth certain ground rules for plaintiff classes attempting to set up defendant class opposition. Preliminarily, certification will not be forthcoming unless every named plaintiff has a cause of action against every member of the defendant class except where the defendants are related by law or conspiracy. Even then, plaintiffs attempting to certify defendant classes under Rule 23(b)(3) [, Fed.R.Civ. P.,] must demonstrate clearly that common questions do in fact predominate over individual questions. Finally, a defendant class action may be simply an inappropriate method of adjudicating any case where the combination of punitive damages and joint and several liability threaten to transform a statutory scheme for personal accountability into ready martyrdom for the unlucky defendant whose deep pocket will pay for the sins of the multitude."
79 F.R.D. at 295.
In this action, the trial court found a juridical link among all defendants and held that they could all be joined in one action because, the court presumed, all of the defendants would rely on the same statutory defense and because each time a plaintiff played a video-gaming machine owned or leased by one of the defendants, it was an identical contractual transaction, wherever it occurred in Alabama, regardless of which plaintiff was playing and regardless of which defendant owned the game. The trial court stated in its order certifying the defendant class that the examples of the juridical link noted in Activision Securities Litigation, 621 F.Supp. 415 (N.D.Cal.1985), and in Ragsdale v. Turnock, 625 F.Supp. 1212 (N.D.Ill.1985), were both applicable in this case. We do not agree. We conclude that the trial court improperly found the existence of a juridical link between the defendants in this case.
For example, we do not find the examples of the juridical link noted in Activision Securities Litigation, supra, and in Ragsdale v. Turnock, supra, to be applicable in this case. In In Re Activision Securities, supra, the Court found that the defendants, who were all underwriters and members in a securities syndicate, had entered into a written agreement, entitled "Agreement Among Underwriters," authorizing two of the syndicate members to act on behalf of the syndicate in connection with the issuance of a certain security. When purchasers of the security sued the underwriters alleging that the offering materials contained misrepresentations or omissions, the Activision court stated:
"Defendants in this action have entered into an Agreement Among Underwriters. The court finds this Agreement sufficient to provide the `juridical' link to take this case out of the La Mar [v. H & B Novelty & Loan Co., 489 F.2d 461 (9th Cir.1973)] situation. By the *216 terms of this Agreement defendant underwriters are bound together in a common course of conduct for purposes of the Activision offering. Thus, a `single resolution of the dispute would be expeditious.'"
In re Activision Sec. Litig., 621 F.Supp. at 432.
We do not find the facts of Activision analogous to those of the instant case. There has been no finding that the defendants in this case entered into a written agreement or that they agreed to be bound to a common course of conduct; the trial court did not even note that the plaintiffs alleged a conspiracy among the defendants. Thus, the juridical-link exception found in Activision is missing here.
Nor do we find the example of the juridical-link exception recognized in Ragsdale v. Turnock, 625 F.Supp. 1212 (N.D.Ill. 1985), to exist in this case. The plaintiffs in Ragsdale sought to enjoin a state statute they alleged was unconstitutional; the plaintiffs in Ragsdale did not seek to recover monetary damages. The plaintiff class sought to certify a group of state's attorneys as a defendant class. The federal district court in Ragsdale stated:
"There is clearly a `juridical link' between the Illinois State's Attorneys here. Under Ill. Rev. Stat. ch. 14, para. 5, each and every State's Attorney is charged with the duty of prosecuting all civil and criminal actions in which the people of the state or county may be concerned. Also, under section 14 of the [Illinois Health Facilities Planning Act], which deals with violations, the State's Attorneys are specifically charged with the duty of representing the people of Illinois in proceedings under that section. As all State's Attorneys are charged under the same statutes with the duty to take uniform enforcement action with respect to plaintiffs, the court therefore finds that the State's Attorneys are related in a way such that single resolution of the dispute is preferred to a multiplicity of similar actions."
625 F.Supp. at 1223 n. 11. See also Turpeau v. Fidelity Fin. Servs., Inc., 936 F.Supp. 975, 978 (N.D.Ga.1996) (noting that "[j]uridical links are most often found in cases involving a defendant class whose members are `officials of a single state ... charged with enforcing or uniformly acting in accordance with a state statute, or common rule or practice of a state-wide application, which is alleged to be unconstitutional,' " federal district court refused to find juridical link under facts before it, even though the plaintiffs alleged that the defendants had violated a state statute, because the defendants were not state officials).
We find the facts of this case to be most like those presented in Turpeau v. Fidelity Financial Services, Inc., supra. In that case, the federal district court for the Northern District of Georgia held that automobile purchasers, as class-action plaintiffs, could not use the juridical-link exception to validly join as defendants all of the lenders and providers of credit-life insurance that the plaintiffs sought to hold liable for the sales of credit-life insurance in amounts that allegedly exceeded the statutory limits. The Turpeau court noted that each credit transaction at issue was made by different plaintiffs with different defendants, and, thus, each defendant had not injured each plaintiff. See Turpeau, 936 F.Supp. at 978.
This case presents a scenario very similar to the one presented in Turpeau. In this case, the trial court's class-certification order does not indicate that each named plaintiff has a cause of action against each member of the defendant *217 class, and it is clear that each member of the defendant class has not injured each plaintiff. Nor did the evidence presented at the class-certification hearing properly bring this case within one of the exceptions to this requirement discussed above. Rather, the trial court attempted to rely upon the fact that each plaintiff and each defendant interacted in essentially the same manner and, therefore, the claims of the plaintiff class could relate to the defendant class as a whole. However, this was the exact scenario rejected in Turpeau as a basis for applying the juridical-link exception.
As was the case in Turpeau, the defendants sought to be named as a class in this action are not state officials charged with enforcing, or acting uniformly in accordance with, a state statute. They are simply business entities and individuals located throughout this state that have engaged in the business of operating or leasing video-gaming machines. The fact that the defendants engage in similar or related businesses is insufficient to overcome the due-process concerns raised by plaintiffs' attempt to certify a defendant class.
We note that the plaintiffs, at least at one point in this litigation, alleged that a conspiracy existed among the defendants to cause the plaintiffs to engage unknowingly in unlawful conduct. The trial court's certification order does not address this claim in the context of the typicality requirement or the juridical-link exception. See La Mar, supra (recognizing that when the plaintiffs' injuries are the result of a conspiracy or a concerted scheme among the defendants, each member of the plaintiff class need not have a cause of action against every defendant before a defendant class can be certified). Accordingly, it is unclear whether the plaintiffs have abandoned this claim or whether the trial court found this claim to be inapplicable to the plaintiffs' attempts to certify the defendant classes. We simply note that the trial court's finding that each plaintiff in the plaintiff class had similar transactions but with a different defendant in the defendant class, standing alone, is inadequate to meet the typicality requirement of Rule 23(a), Ala. R. Civ. P. We conclude that the trial court improperly applied the juridical-link exception to find that the plaintiffs had met the typicality requirement for certification of the defendant class. Without an adequate showing of typicality among the claims and defenses of the defendant class members, the plaintiffs have not met the requirements of Rule 23(a) and the defendant class they seek to certify cannot be certified.

Rule 23(b)(1)
We also note that even if we found that the typicality requirement of Rule 23(a) had been met in this case, certification of a defendant class gives rise to problems under Rule 23(b). As we noted in our discussion of certification of the plaintiff's class, certification under Rule 23(b)(1) is inappropriate when a plaintiff seeks monetary damages. The plaintiffs in this case unquestionably seek to recover monetary damages, and the trial court's certification order did not limit the claims against the defendant classes to injunctive and declaratory relief. Thus, the trial court's order, as it is currently phrased, improperly certifies the defendant classes under Rule 23(b)(1), Ala. R. Civ. P.

Rule 23(b)(2)
Like certification of a plaintiff class under Rule 23(b)(2), Ala. R. Civ. P., certification of a defendant class under Rule 23(b)(2) is subject to the same limitationthe relief sought must be predominately injunctive relief. See Compass Bank v. Snow, 823 So.2d at 678. "A party's intention to seek damages does not *218 foreclose certification under Rule 23(b)(2), as long as the final relief sought does not relate `exclusively or predominantly to monetary damages.'" Tilley v. TJX Cos., 212 F.R.D. 43, 49 (D.Mass.2003) (discussing court's refusal to certify a defendant class under Rule 23(b)(2), Fed.R.Civ.P., and citing Markarian v. Connecticut Mutual Life Ins. Co., 202 F.R.D. 60, 70 (D.Mass.2001) (quoting in turn the 1966 Advisory Committee Note to Rule 23, Fed. R.Civ.P.)).
As established in our discussion of the certification of the plaintiff class, the plaintiffs seek to recover compensatory damages, including the money they spent while playing the video-gaming machines owned or leased by the defendants, as well as damages for alleged emotional distress. The plaintiffs also seek punitive damages. We have already concluded that the plaintiffs' claims for money damages predominate over their claims for declaratory and injunctive relief. For this reason, certification of the defendant classes is improper under Rule 23(b)(2).

Rule 23(b)(3)
We must also conclude that, as the class-certification orders are now presented to us, the trial court improperly certified the defendant classes pursuant to Rule 23(b)(3) because individual issues predominate over those issues common to the members of the defendant class. This conclusion is best illustrated by considering the conspiracy claim alleged in the plaintiffs' complaint. If that allegation remains in this case, it raises far more individual issues than it does ones common to the defendants. See, e.g., In re Hotel Telephone Charges, supra (in action alleging a conspiracy among the defendants to violate antitrust laws, the United States Court of Appeals for the Ninth Circuit held that defendants could not be certified as a class because the conspiracy claim created numerous individual issues, which predominated over those issues common to the defendants). However, that allegation is the only mechanism that might establish the element of typicality necessary to certify the defendants as a class in this action. Thus, if the conspiracy allegation is part of this action, the defendant classes may not be certified under Rule 23(b)(3) because of the predominance requirement; if the plaintiffs no longer allege a conspiracy among the members of the defendant classes, the plaintiffs have not established the typicality requirement of Rule 23(a). This dichotomy amply illustrates that the relief sought by the plaintiffs, as well as the manner in which the classes are now structured, makes this case inappropriate for class-action treatment. We conclude that the trial court improperly certified the defendant classes.

V.

The Preliminary Injunction
In its class-certification orders, the trial court also granted the plaintiffs' motion for a preliminary injunction and enjoined the "operation of any [video-gaming] machines within the State of Alabama until the trial or other resolution of all claims" in this action. The trial court determined that no security bond was required under the exception applicable to issues of overriding public concern "given the subject matter and issues involved in this case."
The defendants challenge the trial court's failure to provide notice that it would be considering the preliminary injunction at the class-certification hearing; they also challenge the trial court's finding that the plaintiffs need not post a security bond.
*219 Notice to the adverse party before a preliminary injunction is issued is mandatory, pursuant to Rule 65(a), Ala. R. Civ. P. The defendants had no indication that the request for a preliminary injunction was to be heard at the class-certification hearing, that the defendants needed to address the preliminary injunction at that time, or that the request had been set for a hearing. An adverse party must have notice and a hearing in order to adequately oppose a request for a preliminary injunction. Under the facts of this case, we have no difficulty concluding that the trial court exceeded its discretion in issuing the preliminary injunction in conjunction with the class-certification orders. Based on our resolution of this issue, we pretermit consideration of whether the trial court exceeded its discretion by not requiring the plaintiffs to post a security bond. We dissolve the preliminary injunction issued by the trial court, and we remand this case for further proceedings consistent with this opinion.

Conclusion
We reverse the trial court's orders certifying the plaintiff class and the defendant classes. We also dissolve the preliminary injunction issued by the trial court. We remand this case to the trial court for further proceedings consistent with this opinion.
PRELIMINARY INJUNCTION DISSOLVED; REVERSED AND REMANDED.
HOUSTON, SEE, LYONS, BROWN, HARWOOD, and WOODALL, JJ., concur.
JOHNSTONE, J., concurs in the rationale in part and concurs in the judgment.
JOHNSTONE, Justice (concurring in the rationale in part and concurring in the judgment).
But for one narrow exception, I concur in the scholarly main opinion. The exception does not affect the result in the case.
The exception is that I do not agree that a claim for "unjust enrichment or money had and received" based solely on the alternative theory "that the defendants hold money that, in equity and good conscience, belongs to the plaintiffs," "requires individualized inquiry into the state of mind of each plaintiff," as suggested by the main opinion. 873 So.2d at 211. This particular alternative, as distinguished from the "fraud-or-mistake" alternative for a claim for unjust enrichment or money had and received, would not necessarily require individualized inquiry into the putative class plaintiffs' respective states of mind, if the plaintiffs were pursuing this theory. For example, this Court has recognized money had and received as a valid theory for the recovery of purchase money held by the seller of a business who failed to satisfy a condition precedent of the sales contract, Kennedy v. Collins, 250 Ala. 503, 35 So.2d 92 (1948); for the recovery of purchase money held by the seller of a parcel of land under an executory sales contract that was not performed, Chandler v. Wilder, 215 Ala. 209, 110 So. 306 (1926); and for the recovery of money held by one seller of land who reneged on his agreement to pay it to two other sellers, Christie v. Durden, 205 Ala. 571, 88 So. 667 (1921).
In the case before us, however, the plaintiffs do not allege any claim based solely on the theory "that the defendants hold money that, in equity and good conscience, belongs to the plaintiffs." Thus the potential suitability of such a claim for class certification does not avail these plaintiffs. Rather, these plaintiffs rely on *220 the fraud-or-mistake alternative for a claim for unjust enrichment or money had and received, which is not suitable for class certification, as the main opinion explains.
NOTES
[1] These appellants are named on an attachment to the notice of appeal.
[2] The trial court issued two separate orders; however, the orders were issued on the same date.
[3] See Pickard and Dowdell's sixth amended complaint, in which they state that they seek compensatory and punitive damages for "each and every claim asserted."
[4] This hearing was continued; it was then completed on April 1, 2002.
[5] Although the trial court indicated in its memorandum opinion in support of its order that it was certifying a class under all of the subdivisions of Rule 23, Ala. R. Civ. P., including Rule 23(b)(3), the trial court's order, issued simultaneously with the memorandum opinion, does not mention Rule 23(b)(3). This Court will presume that the trial court intended to certify a class pursuant to Rule 23(b)(3), Ala. R. Civ. P.
[6] Although the trial court's order specifically mentions only Rule 23(b)(1), we assume the trial court intended to certify the plaintiffs' claims pursuant to Rule 23(b)(1)(A); that is the only subsection we find applicable and that is the only subsection referred to or discussed at the class-certification hearing.
[7] "Because the Alabama Rules of Civil Procedure were patterned after the Federal Rules of Civil Procedure, cases construing the federal rules are considered authoritative in construing the Alabama rules." Reynolds Metals Co. v. Hill, 825 So.2d 100, 104 n. 1 (Ala. 2002), citing Cutler v. Orkin Exterminating Co., 770 So.2d 67 (Ala.2000).
[8] See also Ticor Title Ins. Co. v. Brown, 511 U.S. 117, 114 S.Ct. 1359, 128 L.Ed.2d 33 (1994) (noting the existence of "at least a substantial possibility" that actions seeking monetary damages are certifiable only under Rule 23(b)(3)). Thus, the United States Supreme Court has strongly questioned the practice of certifying under Rule 23(b)(1) or Rule 23(b)(2) actions in which money damages are sought.
[9] Section 8-1-150(a), Ala.Code 1975, provides:

"(a) All contracts founded in whole or in part on a gambling consideration are void. Any person who has paid any money or delivered any thing of value lost upon any game or wager may recover such money, thing, or its value by an action commenced within six months from the time of such payment or delivery."
[10] See also Akerman v. Oryx Communications, Inc., 609 F.Supp. 363, 375 (S.D.N.Y.1984) (requiring, as a general rule, each member of the designated plaintiff class to have a colorable claim against each member of the defendant class); accord Vulcan Soc'y v. Fire Dep't, 82 F.R.D. 379, 398-99 (S.D.N.Y.1979).