39 So.2d 291

## BRYANT v. STARKEY.

### 8 Div. 439.

Supreme Court of Alabama.
Feb. 24, 1949.

H. G. Bailey, of Boaz, for appellant.

Brown, Scott & Dawson, of Scottsboro, and Chas J. Scott, of Fort Payne, for appellee.

LIVINGSTON, Justice.

The appeal is from a judgment of non-suit induced by the action of the trial court in sustaining demurrers to the four counts of the complaint. Admittedly, counts one, two and seven are, in legal effect, the same for the purposes here pertinent. As illustrative, we will here set out count two:

"Plaintiff claims of defendant three thousand two hundred and no/100 ($3200.00) dollars, as damages for that heretofore on, to-wit: the 28th day of January, 1947, the defendant, J. W. Starkey, did enter into a contract or agreement with the plaintiff, J. M. Bryant, whereby one contract consisting of 100 bales of cotton was sold on account of the plaintiff, on the New York Stock Exchange for 28.68 cents a pound; and one contract consisting of 100 bales of cotton was sold on the account of plaintiff, on the New York Stock Exchange at 28.82 cents a pound. And the plaintiff alleges that the said defendant entered into an agreement with the said plaintiff whereby in consideration of the defendant being allowed to share in one-half of any profits realized in connection with said transaction, the said defendant agreed that the said plaintiff should not have any loss in connection with said transaction; and the defendant agreed to reimburse plaintiff for any loss that plaintiff should sustain by reason of the sale of the said two contracts consisting of 100 bales of cotton each. And plaintiff alleges that as result of said sale, he sustained a loss in the amount of three thousand two hundred and no/100 ($3200.00) dollars, together with interest thereon from February 20, 1947, hence, this suit."

Appellee, the defendant in the court below, argues two grounds against the sufficiency of count two, i.e., the want of consideration—apparent on the face of the count, and that the count shows on its face that the contract on which the suit is

founded is a gambling or wagering contract, and therefore illegal and void.

We think it clear enough, without argument, that if the contract is not a gambling contract, but is legal and valid as to subject matter, it is founded on sufficient consideration.

The contract here declared on depends for its validity upon the contracts made for the sale of two hundred bales of cotton sold on the New York Cotton Exchange.

Section 30, Title 9, Code of 1940, is as follows:

"All contracts of sale for the future delivery of any commodity, article, personal property, stock or bond, wherein the parties thereto do not intend a delivery of the article contracted for, but do intend to gamble on the difference between the contract price and some subsequent market price, shall be illegal and void and no action shall be maintained in any court to enforce such contract nor to compel payment of any note or security given in payment or settlement of the same."

Section 33 of Title 9, Code, reads:

"Proof that anything of value, agreed to be sold and delivered, was not actually delivered at the time of making the agreement to sell and deliver, and that one of the parties to such agreement deposited or secured, or agreed to deposit or secure, what are commonly called 'margins,' shall constitute prima facie evidence of the contract declared void by the preceding sections; also proof of the fact that any contract for the future delivery of cotton was not made subject to the provisions of any federal statute relating thereto (including such amendments as may hereafter be made to such statutes by congress) shall be prima facie evidence of an illegal contract declared void by the preceding section."

The courts take judicial notice that the New York Cotton Exchange is operated under the general supervision of the United States Department of Agriculture, under the provision of the federal statute known as the "Cotton Futures Act", 26 U.S.C.A. §§ 1920–1935. J. H. Arnold & Co. v. Gibson, 216 Ala. 314, 113 So. 25.

In our opinion, count two is controlled by the case of Marengo Abstract Co. v. C. W. Hooper & Co., 174 Ala. 497, 56 So. 580, 583, where it was held:

"At common law and under the statute (Code, § 3349), that the form and terms of the contract for future delivery of commodities are free from indicia of illegality did not—does not—conclude the inquiry of illegality vel non, for the real intention of the parties may be found by recourse to proper evidence tending to show the 'nature of the true transaction and the circumstances attending it.' Hawley v. Bibb, supra [69 Ala. 52]; Code, § 3349.

"If a contract for the future delivery of commodities is fair on its face—without indicia of illegality refuting the presumption that parties do not intend to make an illegal contract of that character—obviously (omitting, at this stage, consideration of our statute [Code, § 3349]) the assertion of such a contract, with a view to the enforcement of its obligations would not require the pleader thereof to affirm that the intention of the parties in the premises was to deal in the property, and not to wager upon market fluctuations. To conclude otherwise would be to initially impose upon a party to a contract, fair upon its face, the duty of allegation of his innocence and of the validity of his contract, when and as he engaged, and, in consequence, to lay upon him the onus of sustaining the allegations. The presumptions stated refute any such conclusion.

"Has our cited statute altered this matter as respects the assertion in pleading of such contracts? We think not. There is nothing in the statutes on this subject, which are a codification of the act approved March 7, 1907 (Gen. Acts 1907, pp. 448, 452), whereupon it could be contended that the legislative intention was to deny the application of the mentioned presumptions to contracts free from illegality on their faces. Indeed, from the provision made in section 2 of the act (Code, § 3351)

with respect to the effect, prima facia, of evidence of certain, defined character, the necessary implication is that the Legislature did not intend to impose the burden of allegation and proof upon a party asserting, with a view to its enforcement, a contract for future delivery.

"A very different statutory status was involved in Gist v. Western Union Tel. Co., 45 S.C. 344, 23 S.E. 143, 55 Am.St.Rep. 763. There the statutes expressly laid the burden of proof upon any one seeking to enforce a right or obligation arising out of a contract for future delivery; and, besides, the major statute of the system of laws there considered condemned every future delivery contract 'unless' the engagement possessed the elements requisite to make a valid contract of that character under that system. It was there ruled that no cause was stated, 'unless' the requirements of the system, to render such a contract valid, were affirmatively alleged. One of the differences between that system and our own (Code, c. 67, art. 5) is that between a general prohibition with a legal exception and a prohibition directed against specific acts of a larger class. There the pleader must, by averment, bring his contract, if it be valid at all, within the purview of the exception from the major prohibition. His obligation is affirmative. The contract being valid upon its face, with us the presumption of intention to validly engage refers the contract to the law that will sustain it—that sanctions its validity. The result under the South Carolina system and that under our own would be, in substance, the same; but the burden of allegation and proof is not, as indicated, the same. Hence it must be held, as indicated, that this general rule applies, namely, that he who would defeat a contract, valid on its face, for illegality, has the burden of allegation to that end. 9 Cyc. p. 762; Gafford v. Speaker, 125 Ala. 498, 27 So. 1003; 5 Mayf.Dig. p. 371." See, also, Smith et al. v. Odell, 21 Ala.App. 358, 108 So. 400.

 The contract, made the basis of count two of the complaint, depending as it does for its validity upon the contracts of sale made on the New York Cotton Exchange, and for aught appearing those contracts being valid, the contract declared on is also valid. The presumption is that parties do not intend to make an illegal contract. The contract sued on is fair upon its face, and the burden of allegation and proof that it is not is upon him who asserts it. Count two was not subject to the attack leveled against it. As we have said, admittedly, so far as here pertinent, the only attack made on counts one and seven is that made on count two. The trial court was in error in sustaining demurrer to counts one, two and seven.

Count eight reads as follows:

"Plaintiff claims of the defendant the sum of three thousand two hundred and no/100 dollars ($3,200.00) paid by plaintiff for and on behalf of the defendant, at the defendant's instance and request, as the result of a wager by and between plaintiff and defendant to the effect that the price of cotton would decrease after January 20, 1947; plaintiff avers that he has demanded said sum of money from defendant and defendant has failed and refused to pay same; and plaintiff claims and sues for the same, together with interest thereon."

Count eight is an attempt to take advantage of the provisions of section 44, Title 9, Code of 1940, which read:

"All contracts, founded in whole or in part, on a gambling consideration, are void; and any person who has paid any money, or delivered any thing of value lost upon any game or wager, may recover such money, thing or its value, by action commenced within six months from the time of such payment or delivery."

Section 2163, Code of 1896, is identical with section 44, supra.

In Motlow v. Johnson, 145 Ala. 373, 39 So. 710, 711, 8 Ann.Cas. 188, it was said:

"The theory, and the only theory, upon which the plaintiff may recover, even under the statute, is that the defendants have money belonging to the plaintiff which they have no right to retain. The object of

the statute avoiding gaming contracts is, besides placing the seal of the law's condemnation on such contracts, to put the parties in statu quo as to all money won or lost."

Section 44, supra, has no application here.

■ Count eight shows on its face that no money ever went into the hands of defendant Starkey. His demurrer pointed out the defect and should have been sustained.

For the errors pointed out above, the cause must be, and is, reversed and remanded.

Reversed and remanded.

BROWN, SIMPSON and STAKELY, JJ., concur.