On Application for Rehearing
This court's opinion of March 26, 2004, is withdrawn, and the following is substituted therefor.
Bruno's Supermarkets, Inc. ("Bruno's"), appeals from an order entered by the Jefferson Circuit Court granting the plaintiff Dorothy Massey's motion for a new trial. We reverse and remand.
On December 18, 2000, Massey, then 74 years old, was walking in the produce department of a Food World grocery store owned and operated by Bruno's when she stepped on a metal produce rack and fell, allegedly injuring her back and one leg. It is undisputed that a portion of Massey's medical expenses stemming from the alleged injuries were paid by Medicare and Blue Cross/Blue Shield of Alabama. On June 6, 2001, Massey filed a complaint against Bruno's in the Jefferson Circuit Court seeking damages for the injuries she allegedly sustained in the slip and fall.
Before the trial, Massey submitted a list of potential witnesses that included, among others, "[r]epresentatives of Blue Cross/Blue Shield" and "[r]epresentatives of Medicare." However, Massey did not call any of these individuals to testify at trial.
In its opening statement, counsel for Bruno's related to the jury that "[y]ou will learn that [Massey's] medical bills . . . have been paid by Medicare and Blue Cross/Blue Shield" and that "if [Massey] prove[s] to you she have [sic] future medicals, thank goodness she has that health insurance and Medicare to take care of her, just like she did in this situation." Massey's counsel did not address the issue of reimbursement of medical expenses in his opening statement.
During the trial, upon questioning from her own counsel, Massey stated that her insurance, including Medicare, had paid *Page 864 
some of her medical expenses that resulted from the slip and fall. Massey's counsel then asked her whether she paid premiums for her insurance, to which counsel for Bruno's objected, and the following exchange occurred:
 "[BRUNO'S COUNSEL]: It's improper to ask about premiums for insurance. We acknowledge she has it. We acknowledge there are going to be some witnesses who come in here and talk about the subrogation aspect, but it's improper testimony for her to talk about it.
"[THE COURT]: Overruled.
After the trial court overruled Bruno's objection, Massey's counsel did not pursue an answer to his question concerning insurance premiums, but instead moved on to the following line of inquiry:
 "[MASSEY'S COUNSEL]: If Bruno's were at fault and the jury awards your medical bills, do you know whether you will have to pay Medicare and Blue Cross back?
 "[BRUNO'S COUNSEL]: Now, we object to that, Your Honor, because it is our understanding that both representatives of Blue Cross and Medicare will be here, and they're the best people to testify as to whether or not they are going to put forth a subrogation claim.
 "[MASSEY'S COUNSEL]: Judge, she's not going to testify as to what is owed.
"[THE COURT]: You said the best evidence?
 "[BRUNO'S COUNSEL]: Yes, sir. It is our understanding, according to [Massey's counsel], he was going to have representatives from Blue Cross and Medicare here to testify about their subrogation interest and to tell this Court how much they were going to be claiming. That's fine, but we think it is improper for Ms. Massey to do so without some type of documentation as to what was paid, what was written off, and how much may be owed on subrogation. So we object to her doing it.
 "The best evidence would be either documents or testimony from those providers or those companies that say they may subrogate.
 "[MASSEY'S COUNSEL]: I haven't asked her how much she has to pay or whether she knows that, so the objection is premature.
 "[BRUNO'S COUNSEL]: He asked her what other companies intend to do and the best evidence comes from those companies not from Ms. Massey. That's not her decision.
 "[MASSEY'S COUNSEL]: The best evidence is an objection about documents.
 "[THE COURT]: I am going to sustain the objection, but not for the reasons stated.
"[BRUNO'S COUNSEL]: All right, sir.
"[MASSEY'S COUNSEL]: May I approach, Your Honor?
"[THE COURT]: Yes.
 "[MASSEY'S COUNSEL]: Ms. Massey, let me ask you to identify these documents. I'm not going to be able to get them in. I'm just asking you to identify them. Do you recognize them?
"[MASSEY]: Yes, I do.
 "[MASSEY'S COUNSEL]: Do you want to see them first? [Directed to Bruno's counsel].
"[BRUNO'S COUNSEL]: Yes. I've never seen them before.
 "[MASSEY'S COUNSEL]: They are the bills from the insurance company or some letters she received
"[BRUNO'S COUNSEL]: These are to you? *Page 865 
"[MASSEY'S COUNSEL]: She got a copy of it.
"[BRUNO'S COUNSEL]: Okay.
 "[MASSEY'S COUNSEL]: Ms. Massey, do you recognize these letters?
"[MASSEY]: Yes, I do.
 "[MASSEY'S COUNSEL]: And did you receive these letters in the mail?
"[MASSEY]: Yes.
 "[MASSEY'S COUNSEL]: And who did you receive these letters from?
 "[MASSEY]: This right here is from Medicare (indicating).
 "[BRUNO'S COUNSEL]: Judge, before we go any further, this is hearsay that she's testifying about. We object to it. She can identify the letters that she's seen them, [but] to tell about who they came from and what they said would be hearsay.
 "[MASSEY]: Well, right up here it tells you who they came from (indicating).
 "[BRUNO'S COUNSEL]: Yes, ma'am. You're right again, Ms. Massey. It does tell who it came from, but it's improper.
"[MASSEY'S COUNSEL]: We'll move on.
 "[THE COURT]: Sometimes the rules of evidence don't make common sense.
 "[BRUNO'S COUNSEL]: No, they don't, but we have to go by them."
Following this exchange, Massey's counsel "moved on" to other inquiries without attempting to otherwise authenticate the letter in question or to introduce it into evidence.
At no other time during the trial did Massey attempt to present other evidence — through either witnesses or documentation — as to the issue of subrogation. After the close of all the evidence, a colloquy involving the parties' counsel and the trial court occurred in which Bruno's counsel requested that Massey's counsel not be allowed to mention the issue of subrogation in his closing statement because "[t]hat's not in evidence." After an extended discussion of the matter, the trial court stated: "There is no evidence before this Court that [Massey] has to pay back a specific amount of money." The trial court then sustained the objection and forbade Massey's counsel from mentioning subrogation in his closing statement to the jury.
Nevertheless, during Massey's closing statement to the jury, the following occurred:
 "[MASSEY'S COUNSEL]: But I want you to understand something[:] the law requires that you award medical expenses and there's a reason for that. There's a reason for that. You heard evidence of these medical bills and medical expenses and you heard — well, you heard this lawyer get up and talk about her insurance. Here is what you didn't hear. You didn't hear a witness from Medicare get up here and talk about their rights that they have here.
 "[BRUNO'S COUNSEL]: Judge you have been over this. We object to it. You told him yesterday he could not make this argument. It is not in evidence, and we object to it.
 "[MASSEY'S COUNSEL]: Judge, I am just saying what wasn't presented by the defendants.
"[BRUNO'S COUNSEL]: No, sir.
"[MASSEY'S COUNSEL]: I can argue that.
 "[BRUNO'S COUNSEL]: It's his case to prove. You have ruled on this issue.
"[THE COURT]: Sustain the objection." *Page 866 
In his closing statement to the jury, counsel for Bruno's stated, with regard to the issue of medical expenses:
 "They come in and say, all right, she has got medical bills. [Massey's counsel] keeps talking about the law; let me show you what the law is. I told you the judge is going to read you what the law is. Let me show you what it is. `The measure of damages for medical expenses is all reasonable expenses necessarily incurred for doctors and medical bills which the plaintiff has paid or is obligated to pay. The reasonableness and the necessity of those expenses are matters for your determination, which the plaintiff has paid or is obligated to pay.' You heard [Massey's] testimony[:] all her medical bills were paid by Medicare and Blue Cross with the exception of $557. She is obligated to pay $557."
On November 1, 2002, the jury returned a verdict in Massey's favor, awarding her damages in the amount of $30,000. On December 2, 2002, Massey filed a motion for a new trial or, in the alternative, a motion for additur, on the ground that the trial court had erred in allowing counsel for Bruno's to mention in his closing statement that Massey's medical expenses had been paid by Medicare and Blue Cross/Blue Shield but forbidding Massey's counsel from mentioning that Medicare and Blue Cross/Blue Shield would have a subrogation interest in any damages she recovered in the action. The trial court entered an order on January 27, 2003, granting the request for a new trial, stating in pertinent part:
 "During the trial the Court sustained an objection to the introduction of an unauthenticated letter which purported to show the amount of medical expenses [Massey] was required to repay. This ruling was correct. [Massey] states that the Court did not allow other evidence that [she] was required to repay an amount of such medical payments.
 "The Court evidently did not allow evidence that [Massey] was on notice that an amount was due on subrogation. This was error on the part of the Court. [Bruno's] had stated in its opening statement that [Massey's] medical bills of $50,000 were paid by Medicare and Blue Cross/Blue Shield. . . . [Massey's] Motion For a New Trial is granted."
Bruno's appeals.
"Whether to grant or to deny a motion for new trial is vested within the sound discretion of the trial court, and this court will not reverse that decision on appeal without a showing of an abuse of discretion." Smith v. Darring, 659 So.2d 678, 679
(Ala.Civ.App. 1995).
Section 12-21-45, Ala. Code 1975, provides, in pertinent part:
 "(a) In all civil actions where damages for any medical or hospital expenses are claimed and are legally recoverable for personal injury or death, evidence that the plaintiff's medical or hospital expenses have been or will be paid or reimbursed shall be admissible as competent evidence. In such actions upon admission of evidence respecting reimbursement or payment of medical or hospital expenses, the plaintiff shall be entitled to introduce evidence of the cost of obtaining reimbursement or payment of medical or hospital expenses.
". . . .
 "(c) Upon proof by the plaintiff to the court that the plaintiff is obligated to repay the medical or hospital expenses which have been or will be paid or reimbursed, evidence relating to such reimbursement or payment shall be admissible."
Massey contended in her motion for a new trial that while the trial court *Page 867 
permitted Bruno's to present evidence that all or part of her medical expenses had been paid by Medicare and Blue Cross/Blue Shield, as subsection (a) of § 12-21-45 permits Bruno's to do, the trial court improperly forbade Massey from presenting evidence that she is obligated to reimburse Medicare and Blue Cross/Blue Shield through her damages recovery even though subsection (c) permits such evidence.
However, subsection (c) does not state that evidence relating to subrogation "shall be admissible" regardless of whether or not it is competent evidence. The remainder of the Rules of Evidence still apply both to evidence presented concerning payment of expenses by an insurer and evidence presented concerning an obligation to repay an insurer. In other words, Massey had to present competent evidence that she was obligated to repay Medicare and Blue Cross/Blue Shield for her medical expenses.
In this case, the trial court prohibited Massey from testifying as to the truth of the content of a letter allegedly received from Medicare and Blue Cross/Blue Shield stating that Medicare and Blue Cross/Blue Shield intended to enforce a subrogation interest in any recovery she obtained in court. Any such testimony would have constituted statements "offered in evidence to prove the truth of the matter asserted," Rule 801(c), Ala. R. Evid., i.e., that Massey was required to repay Medicare and Blue Cross/Blue Shield, even though Massey's only knowledge of such an obligation was based on the letter. Thus, as the trial court itself observed in its January 27, 2003, order, the testimony was hearsay and was properly prohibited by the trial court.
The trial court's postjudgment order states that Massey contended that she was prohibited from presenting "other
evidence that [she] was required to repay an amount of such medical payments." However, the record indicates that there was no evidence of Massey's personal knowledge that an amount was due in subrogation other than the hearsay statements in the letter about which she attempted to testify. Indeed, in her motion for a new trial, Massey states that "her knowledge that she had to repay Medicare and Blue Cross/Blue Shield came from [the letter]. That is, the letter which informed Mrs. Massey of payments made to her medical providers and the amount of any such payments also informed Mrs. Massey of her obligation to repay medical expenses." Thus, Massey's "personal knowledge" of her obligation to repay medical expenses came from the unauthenticated letter about which the trial court forbade Massey from testifying.
The record indicates that what the trial court forbade Massey from presenting was incompetent evidence concerning subrogation, such as the aforementioned hearsay evidence, notall evidence on that subject. On rehearing, Massey argues various theories as to why she was competent to testify at trial as to her repayment obligation to Medicare and Blue Cross/Blue Shield, despite the hearsay objection that was raised by Bruno's. Those theories, with the exception of the issues discussed elsewhere in this opinion, were not presented at trial. In essence, the trial court's postjudgment ruling would permit Massey to benefit from her own failure to present competent evidence on the issue of subrogation.
Massey also contends that the trial court was required under either the doctrine of completeness or the doctrine of curative admissibility to allow her to present evidence concerning subrogation. The principle embodied in the completeness doctrine is reflected in Rule 106, Ala. R. Evid., which states that "[w]hen a party introduces *Page 868 
part of either a writing or recorded statement, an adverse party may require the introduction at that time of any other part of the writing or statement that ought in fairness to be considered contemporaneously with it." The common-law version of the doctrine, however, is not limited to writings or recorded statements. See, e.g., Advisory Committee Notes, Rule 106, Ala. R. Evid; Bank of Loretto v. Bobo, 37 Ala.App. 139, 152,67 So.2d 77, 89 (1953) ("Proof by one party of a portion of a conversation entitles the opponent to prove all that was said at the same time on the same subject.").
Massey contends that the completeness doctrine applies in this case. Massey argues that because Bruno's was permitted to present evidence that she was reimbursed for her medical expenses, she likewise should be permitted to present evidence that she had an obligation to repay the entities that reimbursed her. The thrust of this argument states nothing more than what § 12-21-45 already permits. As was previously observed, there is no question that Massey was permitted to present evidence concerning subrogation: the issue is whether Massey presented competent evidence on that subject, which the record indicates she failed to do.
The doctrine of curative admissibility is also referred to as the "reply-in-kind" doctrine, and is sometimes considered to be a form of "invited error." See 1 Charles Gamble, McElroy'sAlabama Evidence § 14.01 (5th ed. 1996). "The curative admissibility doctrine holds that if one party introducesillegal evidence, his opponent has the unconditional right to rebut such evidence." American Fire Cas. Ins. Co. v. Bryan,379 So.2d 605, 609 (Ala.Civ.App. 1979) (emphasis added). See,e.g., Smith v. Blankenship, 440 So.2d 1063, 1066 (Ala. 1983) ("Where counsel for a party litigant pursues an improper line of argument he thereby invites a reply in kind, and statements made by opposing counsel which would otherwise be objectionable are often proper." (Emphasis added.)); and Cunningham v.Lowery, 45 Ala.App. 700, 705, 236 So.2d 709, 714 (Civ.App. 1970).
Massey contends that when Bruno's mentioned in its opening statement that Medicare and Blue Cross/Blue Shield had paid most of Massey's medical expenses, Bruno's "opened the door" to otherwise inadmissible evidence concerning subrogation. However, the doctrine of curative admissibility does not apply in this case because § 12-21-45(a) permitted Bruno's to present evidence concerning who paid Massey's medical expenses. In other words, Bruno's did not introduce illegal evidence or pursue an improper line of argument, so there was no error to be cured through other impermissible evidence.
Given the presentation of the evidence and the rulings in the record, it was not error for the trial court to disallow the particular evidence presented by Massey concerning subrogation. Thus, the trial court improperly granted a new trial to Massey. Accordingly, we reverse the judgment of the trial court, and we remand the cause for the entry of a judgment consistent with this opinion.
OPINION OF MARCH 26, 2004, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; REVERSED AND REMANDED.
CRAWLEY, P.J., and THOMPSON and PITTMAN, JJ., concur.
BRYAN, J., concurs in the result, without writing. *Page 869