*746
 
 WOODALL, Justice.
 

 Tora Arthur appeals from a judgment entered on a jury verdict for Samuel Bolen and Julie Bolen, husband and wife, in the Bolens’ personal-injury action against Arthur. We affirm.
 

 I. Factual Background
 

 For the purposes of this appeal, the following pertinent facts are not in dispute. The Bolens purchased a house that Arthur had built. There was an attic in the house that could be accessed by a pull-down ladder Arthur had installed. Mr. Bolen was injured when the ladder separated and fell from the attic opening to which it was attached as he was climbing into the attic. Subsequently, the Bolens sued Arthur on theories of negligence and wantonness. Mr. Bolen sought punitive damages and compensation for his injuries, and Mrs. Bolen sought compensation for her loss of consortium.
 

 During the trial of the cause, the Bolens presented the expert testimony of Michael Van Bree. Although Van Bree was an employee of Engineering Systems, Inc., of Aurora, Illinois, he did not hold a professional engineering license in Alabama or in any other state. Over Arthur’s objection, Van Bree testified that the failure of the attic stairway had resulted from improper installation.
 

 Also, during the trial, Mr. Bolen testified that he had incurred $26,130.82 in medical expenses. On cross-examination, Arthur’s counsel elicited testimony that all those medical expenses had been paid by insurance, including insurance provided by the Tricare Health Care Program (“Tricare”), which is provided by the United States Department of Defense for active-duty and retired members of the United States armed forces. Over Arthur’s objection, the trial court instructed the jury that Mr. Bolen had an obligation to reimburse Tricare from any jury award the amount of medical expenses it had paid. Subsequently, the jury returned a $150,000 verdict for the Bolens. Arthur’s motion for a new trial was denied, and he appealed.
 

 II. Discussion
 

 On appeal, Arthur seeks a judgment from this Court reversing the trial court’s denial of his motion for a new trial and ordering a new trial. As grounds, he argues that the trial court (1) should not have allowed Van Bree, the Bolens’ expert, to testify as to the cause of the failure of the attic stairway, and (2) should not have charged the jury on the matter of reimbursement.
 

 A. Expert Testimony
 

 Before trial, Arthur filed a motion
 
 in limine
 
 to exclude Van Bree’s testimony. As grounds, Arthur argued that “Van Bree, who [was] not a licensed professional engineer
 
 in Alabama
 
 or any other state, [was] prohibited by statute from offering expert testimony.” (Emphasis added.) Arthur further argued:
 

 “Alabama Code § 34-11-1(7) specifically states that the practice of engineering includes the offering of
 
 testimony
 
 regarding review of construction to monitor compliance with specifications:
 

 “ ‘Any professional service or creative work, the adequate performance of which requires engineering education, training, and experience in the application of special knowledge of the mathematical, physical, and engineering sciences to such services or creative work as consultation,
 
 testimony,
 
 investigation, evaluation, planning, design and design coordination of engineering works and systems, planning the use of land and water, performing engineering surveys and studies; and the review of construction or other design products for the purpose of
 
 *747
 
 monitoring compliance with drawings and
 
 specifications
 

 (Some emphasis omitted.)
 

 Following Arthur’s testimony at trial during the Bolens’ case-in-chief, Arthur’s counsel renewed his objection to the proposed testimony of Van Bree. Specifically, the following colloquy occurred:
 

 “Q. [The court]: What is your motion?
 

 “A. [Arthur’s counsel]: It is related to the fact Mr. Van Bree is not licensed to practice engineering in the State of Alabama or any other state. The testimony that he is going to offer is in line with [Ala.Code 1975, § 34-11-1,] that says if you are going to offer testimony, first of all, you have got to be licensed.
 

 “Just reading what is cited in the motion
 
 [in limine
 
 ] here, ‘Any professional service or creative work, the adequate performance of which requires engineering education, training, and experience in the application of special knowledge of the mathematical, physical, and engineering sciences to such services or creative work as consultation,
 
 testimony,
 
 investigation, evaluation, planning’ — on down in here it references review of construction or other design products for the purpose of monitoring compliance with drawings and specifications.
 

 “Mr. Van Bree is going to testify whoever installed this stair didn’t comply with specifications. So that would be engineering testimony. That’s the first pron[g] of our argument. He is also going to testify that the fasteners used didn’t have sufficient sheer loading capability. It is our position that would be engineering testimony as well. He is going to say it is not a structurally related fastener.
 

 “That’s the gist of our argument. He is going to testify about engineering matters, and he is not licensed. He is going to talk about the cause of the failure of the stair, and this statute specifically says if you are going to talk about that, you have got to be licensed. That’s the gist of our argument.
 

 “[The Bolens’ counsel]: Judge, that motion is based on the [opinion in
 
 Board of Water & Sewer Commissioners v. Hunter,
 
 956 So.2d 403 (Ala. 2006) ], which is no longer really good law. [Section § 34-11-1] has been amended. If you look at [§ 34-11-l(7)a.] of the newly adopted statute, it defines practice of engineering. It also specifically struck the word ‘testimony’ from the practice of engineering, so testifying as an expert, as I read the statute, is not part of the practice of engineering as they define it in the statute. It goes on further to say in [that subsection]:
 

 “ ‘Notwithstanding any other provision of this chapter, in qualifying a witness to offer expert testimony on the practice of engineering, the court shall consider the evidence of his or her expertise whether [the proposed witness] holds [a valid] Alabama license for practice of engineering. Provided ... such qualification by the court shall not be withheld [from an] otherwise qualified witness solely on the basis of the failure of the [proposed] witness to hold [such] valid Alabama license.’ [Quoting § 34-11-1(7) ].
 

 “Your Honor, if I may, that statute had been in place a long time, and what happened — there was a case out of Mobile.... It got brought up [on appeal], and what happened [was], everybody started making claims that these people come into the state of
 
 *748
 
 Alabama, and none of these people were licensed engineers in the state of Alabama within the product liability arena, and it stopped all of those product liability cases for quite some time. And then they were going back and forth between the Legislature and all of that until they repealed that part of the statute relating to — a person is allowed to provide testimony in the state of Alabama on engineering matters and they do not actually have to have [an Alabama] license.
 

 “[The court]: I remember that General Motors had a problem with bringing in their design engineer because they weren’t licensed in Alabama. I remember everybody was up in arms about it. That’s what I am trying to get to the bottom of.
 

 “... My first inclination is if there [is] no set of standards, you can have the guy that designed it and made the standards testify.... I don’t know if he is going to have to have a license or not.... I think he can testify to what the construction manual says since he wrote the construction manual and there [are] no governmental standards to say otherwise. He will get to testify to that.”
 

 (Bracketed language and emphasis added.) Arthur renewed his objection when Van Bree took the stand to testify, arguing that, amendments to § 34-11-1, Ala.Code 1975, notwithstanding, Van Bree should not be allowed to testify because he was not licensed as an engineer in
 
 any
 
 state. The trial court overruled that objection, and Van Bree testified.
 

 As the colloquy in the trial court revealed, § 34-11-1(7) was amended in 2007 in response to
 
 Board of Water & Sewer Commissioners of Mobile v. Hunter,
 
 956 So.2d 403 (Ala.2006), which applied, as written, the former version of the statute defining the rendering of expert testimony as the “practice of engineering,” for which an Alabama engineering license was essential. By Act No. 2007-365, Ala. Acts 2007, the legislature deleted the reference to “testimony” from the definition of “practice of engineering” in the introductory portion of subsection (7) and added the paragraph quoted by the Bolens’ counsel in the trial court. It also added subpart d. to subsection (7), which states: “The practice of engineering shall include the offering of expert opinion in any legal proceeding in Alabama
 
 regarding work legally required to be performed under an Alabama engineer’s license number
 
 or seal, which opinion may be given by an
 
 engineer licensed in any jurisdiction.”
 
 (Emphasis added.) Thus, § 34-11-1, as amended and as applicable to this case, differs considerably from its predecessor.
 

 Arthur contends that “Van Bree’s testimony, that the subject attic [ladder] was not installed in accord with the manufacturer’s specifications ..., constitutes ‘the review of construction or other design products for the purpose of monitoring compliance with drawings and specifications.’ ” Reply brief, at 9 (quoting § 34-11-1(7)). According to Arthur, such testimony triggered the provision in § 34-11-l(7)d., which, he contends, required Van Bree to be licensed in at least one state. The Bolens disagree with this construction of the statute. Because the resolution of this issue is a matter of mere statutory construction, the standard of review is
 
 de novo. Ex parte Birmingham Bd. of Educ.,
 
 [Ms. 1071539, November 6, 2009] — So.3d-,-(Ala.2009) (when issues on appeal “ ‘concern only questions of law involving statutory construction, the standard of review is
 
 de novo
 
 ’ ”).
 

 
 *749
 
 “The intent of the Legislature is the polestar of statutory construction.”
 
 Siegelman v. Alabama Ass’n of School
 
 Bds., 819 So.2d 568, 579 (Ala.2001). In construing this statute, we are hardly writing on a clean slate. The substantial amendment to § 34-11-1, coming, as it did, on the heels of this Court’s decision in
 
 Hunter,
 
 reveals much regarding legislative intent. Notwithstanding the fact that the legislature, in amending this section, included two provisions aimed specifically at expert testimony, the section contains much general material having nothing to do with expert testimony. It is a familiar rule of statutory construction that “specific statutory provisions control the more general provisions.”
 
 Mason v. Owens,
 
 514 So.2d 962, 964 (Ala.1987),
 
 overruled on other grounds, Wilkins v. Johnson,
 
 595 So.2d 466 (Ala.1992). The language on which Arthur relies, although descriptive of the practice of engineering in general, is not found in those sections of the amended statute devoted to expert testimony.
 

 It is clear that the possession of an
 
 Alabama
 
 license is never the
 
 sine qua non
 
 of the proffered expert witness’s qualification. The crux of the legislature’s intent as to the giving of expert testimony is expressed in subpart d. of § 34-11-1(7), which is obviously aimed only at the threshold procedure for establishing a breach of the standard of care applicable to Alabama engineers. In that respect, it is reminiscent of Ala.Code 1975, § 6 — 5—548(e), which, in speaking to the “relative standard of care for health care providers,” restricts expert testimony to witnesses who are “similarly situated.” Section 34 — 11—l(7)d. is concerned with testimony regarding work performed, or required to be performed, in Alabama pursuant to an Alabama engineering license. In such a case, the testimony must come from a witness holding an engineer’s license “in any jurisdiction.”
 

 Van Bree’s testimony was only that the stairway was inadequately affixed to the attic opening. It did not address work done by an Alabama engineer; it did not concern “work legally required to be performed under an Alabama engineer’s license.”
 
 [1]
 
 Indeed, Arthur does not contend that the attachment of the stairway to the attic frame was an operation that constituted such work. Consequently, Van Bree’s testimony was not precluded by § 34-11-1 as amended.
 
 [2]
 

 B. Jury Instruction
 

 “A trial court has broad discretion in formulating its jury instructions, provided those instructions accurately reflect the law and the facts of the case.”
 
 Pressley v. State,
 
 770 So.2d 115, 139 (Ala. Crim.App.1999). Thus, “generally speaking, the standard of review for jury instructions is abuse of discretion.”
 
 Pollock v. CCC Invs. I, LLC,
 
 933 So.2d 572, 574 (Fla.Dist.Ct.App.2006).
 

 The trial court gave the following jury instruction:
 

 “In this case, ladies and gentlemen,
 
 evidence has been presented that Tricare has paid medical bills of the plaintiff, Samuel Bolen, that he incurred as a
 
 
 *750
 

 result of his injuries.
 
 If you, the jury, determine that the defendant was at fault in causing the plaintiffs injuries and award money damages,
 
 pursuant to the Federal Medical Care Recovery Act, the plaintiff has a duty and must reimburse Tricare up to the amount of medical charges paid by Tricare.
 
 But if you do not return a verdict in favor of the plaintiff, he is under no obligation to repay those medical bills.”
 

 (Emphasis added.)
 

 Arthur does not challenge the
 
 substance
 
 of this instruction. He contends, instead, only that the evidence produced at trial warranted no instruction, whatever, as to Mr. Bolen’s obligation to reimburse Tricare. Arthur contends that the Bolens could establish Mr. Bolen’s obligation to reimburse Tricare for its payment of his medical expenses
 
 only through the testimony
 
 of a Tricare official.
 

 The Bolens did not offer the testimony of a Tricare official. They did, however, apprise the trial court of the Medical Care Recovery Act, 42 U.S.C. §§ 2651-53 (“the Act”), and invited the trial court to take “judicial notice” of the Act, which the court apparently did. “[C]ourts historically ... take judicial notice of ... the constitution and statutes of the United States.” 2 Norman Singer,
 
 Statutes and Statutory Construction
 
 § 38:3 (6th ed.2001). See
 
 Bryant v. Starkey,
 
 252 Ala. 21, 23, 39 So.2d 291, 292 (1949) (taking judicial notice of a federal statute).
 

 Arthur relies on
 
 Bruno’s Supermarkets, Inc. v. Massey,
 
 914 So.2d 862 (Ala.Civ. App.2005), in which the Court of Civil Appeals held that competent evidence of the injured insured’s obligation to reimburse payment for medical expenses could not consist merely of testimony by the insured that she received letters from the insurer regarding the insurer’s intent to enforce a subrogation interest in any recovery. 914 So.2d at 867. In so doing, Arthur simply ignores the fundamental distinction between the letters by which the insured in
 
 Bruno’s
 
 sought to establish the obligation of reimbursement and the obligation evidence presented here, namely, 42 U.S.C. § 2651, of which an Alabama court may take judicial notice.
 

 Significantly, Arthur did not challenge the
 
 substance of the Act
 
 in the trial court and does not do so in this Court. Specifically, he has never argued that the Act does not, in fact, require the Bolens to reimburse Tricare. To be sure, we are independently aware of a split of authority as to whether the Act requires such a reimbursement. Compare
 
 Holbrook v. Andersen Corp.,
 
 996 F.2d 1339, 1341 (1st Cir.1993) (holding that the Act “makes no provision for the United States to recover against the injured party or from funds unconditionally paid to the injured party by the tortfeasor”), with
 
 United States v. Nation,
 
 299 F.Supp. 266, 268 (N.D.Okla. 1969) (holding that the Act provides for reimbursement from the injured party). However, we decline to enter this debate. The jury instruction is consistent with
 
 Nation’s
 
 interpretation of the Act, and Arthur has
 
 ignored this issue entirely.
 

 “ ‘It is the duty of ... the appellant! ] to demonstrate an error on the part of the trial court....’”
 
 D.C.S. v. L.B.,
 
 4 So.3d 513, 521 (Ala.Civ.App.2008) (quoting
 
 G.E.A. v. D.B.A.,
 
 920 So.2d 1110, 1114 (Ala.Civ.App.2005)). Because Arthur has not met his burden of showing error as to the applicability of the Act, we pretermit further discussion of that issue.
 

 Moreover, the Bolens introduced the records of Mr. Bolen’s medical expenses showing totals of amounts billed, adjustments, and payments by Tricare. Arthur, himself, introduced a packet of “Tricare Explanation of Benefits” statements, show
 
 *751
 
 ing the amounts billed at the relevant times, as well as the amounts of co-payment and the amounts approved for payment by Tricare. Thus, there was not only evidence of an obligation, but also evidence of the
 
 amount
 
 of that obligation. Consequently, Arthur has not met his burden of demonstrating that the trial court exceeded its discretion in charging the jury as to reimbursement.
 

 III. Conclusion
 

 In summary, the trial court did not err in allowing the Bolens’ expert witness to testify. It also did not exceed its discretion in charging the jury on the question of reimbursement. The judgment of the trial court is, therefore, affirmed.
 

 AFFIRMED.
 

 COBB, C.J., and SMITH, PARKER, and SHAW, JJ., concur.
 

 [1]
 

 . Nonlicensure is the only basis asserted by Arthur for the exclusion of Van Bree's testimony. In other words, he does not contend that Van Bree was not otherwise qualified to testify.
 

 [2]
 

 . Arthur also relies on some language in an advisory opinion issued in 2006 by the State Board of Licensure for Professional Engineers and Land Surveyors, as discussed in
 
 Jones v. State of Alabama,
 
 [Ms. CR-05-0527, Aug. 31, 2007]-So.3d-(Ala.Crim.App. 2007). However, because the advisory opinion construed the statute before it was superseded by the relevant amendments, it sheds no light on the issue at hand.