Rel: April 25, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

_____

## CL-2024-0791

_____

### Hal Taylor, as Secretary of the Alabama Law Enforcement Agency

### v.

### Ramona Humphries

### Appeal from Montgomery Circuit Court
### (CV-24-900328)

EDWARDS, Judge.

In February 2024, Ramona Humphries filed in the Montgomery Circuit Court ("the trial court") a complaint against the Alabama Law Enforcement Agency ("ALEA") seeking a judgment declaring her entitlement to the issuance of an Alabama nondriver identification card.

Hal Taylor, the secretary of ALEA ("the secretary"), answered the complaint on behalf of ALEA, denying that Humphries was entitled to the issuance of a nondriver identification card because, he said, she had admitted that she had not produced one of the nine suitable primary forms of identification required for the issuance of the nondriver identification card.[1] In August 2024, Humphries filed a motion for a summary judgment. After a hearing on the motion for a summary judgment, the trial court, on October 2, 2024, entered a judgment in favor of Humphries. The secretary filed a timely notice of appeal to this court, see footnote 1, and requested a stay of the enforcement of the judgment, which the trial court granted.

---

[1]Humphries's action against the agency was barred by sovereign immunity. See Alabama Dep't of Transp. v. Harbert Int'l, Inc., 990 So. 2d 831, 841 (Ala. 2008) (explaining that state agencies are immune from suit and that "only State officers named in their official capacity -- and not State agencies -- may be defendants in [declaratory-judgment] proceedings"), abrogated on other grounds by Ex parte Moulton, 116 So. 3d 1119 (Ala. 2013). However, because the secretary of ALEA answered the complaint, we consider that answer to have effected the substitution of the secretary for ALEA. See Ex parte State of Alabama, 937 So. 2d 56 (Ala. 2006) (directing that the Montgomery Circuit Court dismiss the Alabama Department of Transportation ("ADOT") as a party and substitute the director of ADOT as a defendant after, in response to an inverse-condemnation complaint naming only ADOT as a defendant, the director had filed a motion to dismiss requesting that he be substituted as the proper defendant).

Our review of a summary judgment is de novo; that is, we apply the same standard that was applied in the trial court. Ex parte Ballew, 771 So. 2d 1040, 1041 (Ala. 2000). Rule 56(c)(3), Ala. R. Civ. P., provides that a motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Generally, a party moving for a summary judgment must make a prima facie showing "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Rule 56(c)(3); see Lee v. City of Gadsden, 592 So. 2d 1036, 1038 (Ala. 1992). If the movant meets that burden, "the burden then shifts to the nonmovant to rebut the movant's prima facie showing by 'substantial evidence.'" Lee, 592 So. 2d at 1038. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So. 2d 870, 871 (Ala. 1989). Furthermore, when considering a motion for a summary judgment, "the court must view the evidence in a light most favorable to the nonmoving party and must resolve all reasonable doubts against the moving party." Waits v. Crown Dodge Chrysler Plymouth,

Inc., 770 So. 2d 618, 618 (Ala. Civ. App. 1999). Moreover, we note that an appellate "[c]ourt reviews de novo a trial court's interpretation of a statute because only a question of law is presented." Scott Bridge Co. v. Wright, 883 So. 2d 1221, 1223 (Ala. 2003). The appeal in this case concerns only a question of law -- the interpretation and application of the relevant law relating to the issuance of a nondriver identification card.

Alabama law requires that ALEA "make available to any resident of this state who does not hold a valid Alabama driver's license a nondriver identification card to be used for identification purposes only." Ala. Code 1975, § 32-6-1(c). In order to secure a nondriver identification card, an applicant must provide "[t]he same degree of proof of identification required of applicants for driver's licenses in this state." Id. ALEA was empowered to "establish and promulgate reasonable rules and regulations not in conflict with the laws of this state concerning operation of motor vehicles and concerning the enforcement of the provisions of [Article 1]." Ala. Code 1975, § 32-6-13. To that end, ALEA established the necessary proof of identification for both driver's licenses and

4

nondriver identification cards in Ala. Admin. Code (ALEA), r. 760-X-1-.20.

Rule 760-X-1-.20 provides that "[a]ll applicants for an original Alabama driver license or identification card must submit proof of authorized presence in the United States as authorized under federal law." In addition, the rule specifically sets out the documentation an applicant is required to submit to ALEA, which are "two (2) forms of identification, at least one of which contains a photograph, (one form must be from the 'Primary Listing')." r. 760-X-1-.20(1)(a). The "Primary Listing" of acceptable identification documents contains only the following documents, which may be originals or certified copies and, unless exceptions are noted, must be current: "U.S. Birth Certificate," "U.S. Passport," "Alabama Identification Card," "Alabama Driver License," "Certificate of Naturalization," "Certificate of Citizenship," "U.S. Certificate of Birth Abroad," "Resident Alien Card," or a "Valid Foreign Passport with valid United States immigration document." Id.

In her complaint, Humphries admitted that she had been unable to produce one of the documents from the "Primary Listing" ("the primary-listing documents") as required by ALEA and complained that ALEA had

refused to issue her a nondriver identification card based on that inability. Thus, she sought a declaration of her right to the issuance of a nondriver identification card under § 32-6-1(c). See Ala. Code 1975, § 6-6-223 ("Any person interested … whose rights, status, or other legal relations are affected by a statute … may have determined any question of construction or validity arising under the … statute … and obtain a declaration of rights, status, or other legal relations thereunder."). Humphries attached to her complaint copies of her German birth certificate, her expired Florida driver's license, her Social Security card, and her Medicare card. She further alleged that she had previously held an Alabama driver's license between 2012 and 2015, a fact that ALEA has conceded.

In support of her motion for a summary judgment, Humphries presented the affidavit of her attorney, Kathleen Johnson, who outlined the steps that she had taken on behalf of Humphries to secure a copy of a "Consular Report of Birth Abroad." Johnson admitted that those efforts, which spanned at least three years, had been in vain. Johnson also averred that she had managed to secure for Humphries a Jefferson

6

County voter-identification card, a copy of which was attached to Johnson's affidavit.

Humphries did not submit her own affidavit. Instead, her attorney alleged certain facts in both the complaint and in the summary-judgment motion, neither of which was verified, including that Humphries had begun residing in the United States when she was five years old, that she had been receiving Social Security disability benefits for over a decade, that she is confined to a wheelchair, and that she had lost most of her personal documents when she had moved back to Alabama from Florida. None of those alleged facts were established by testimony or other evidence, but ALEA has not controverted them and has, instead, tacitly conceded them. They are, however, largely immaterial.

In her summary-judgment motion, Humphries first argues that ALEA's sole reason for denying her a nondriver identification card is based on her failure to meet the requirements not of a statute, but of a mere administrative regulation. To the extent that Humphries contends that one of the primary-listing documents is not actually required for the issuance of a nondriver identification card because that requirement is not found in a statute but instead in a regulation, we disagree.

> "Rules, regulations, and general orders of administrative authorities pursuant to powers delegated to them have the force and effect of laws when they are of statewide application and so promulgated that information of their nature and effect is readily available or has become part of common knowledge. State v. Friedkin, 244 Ala. 494, 14 So. 2d 363 (1943). Moreover, where an agency prescribes rules and regulations for the orderly accomplishment of its statutory duties, its officials must vigorously comply with those requirements; regulations are regarded as having the force of law and, therefore, become a part of the statutes authorizing them."

Hand v. State Dep't of Hum. Res., 548 So. 2d 171, 173 (Ala. Civ. App. 1988). ALEA was granted statutory authority to promulgate regulations governing the issuance of Alabama driver's licenses and nondriver identification cards, and Rule 760-X-1-.20, in its present form, has been in place since February 2008.

Humphries concedes that Rule 760-X-1-.20 states that an applicant "must present proof of authorized presence in the United States as authorized under federal law." Humphries then states in her motion for a summary judgment that

> "[t]here can be no doubt that [Humphries] is authorized under federal law to be in the United States. She unquestionably lived in Alabama at least from 2012-2015 and secured a driver's license then. That demonstrates that, at least at one time, Alabama had the requisite documentation to authorize issuance of a driver's license to her. ... It is simply inconceivable that [Humphries] somehow or other lost her

8

citizenship sometime in the last decade while keeping her [S]ocial [S]ecurity card, continuing to receive disability benefits, and remaining on Medicare."

Although we could possibly surmise that, at some point in the past, Humphries had in her possession at least one of the primary-listing documents to establish her identity and to entitle her to the issuance of an Alabama driver's license, we cannot conclude that, when Humphries was unable to present one of the primary-listing documents when she most recently sought an Alabama nondriver identification card, ALEA was required to assume that Humphries is, in fact, legally in the United States or that she is a United States citizen based on ALEA's prior issuance of a driver's license to her.[2] ALEA cannot know what documentation Humphries provided to ALEA in the past to secure her driver's license, and ALEA is not required to presume that her previous documentation or status could not have been one that might have

---

[2]Although Humphries allegedly attempted to secure a nondriver identification card on more than one occasion, nothing in the record reveals the dates of those attempts. Johnson's affidavit states that she and Humphries's other attorney, David Gespass, "have represented … [Humphries] for several years, attempting to secure a non-voter identification card for her" and states that Gespass wrote to ALEA on Humphries's behalf in March 2021 but received no response.

changed, i.e., perhaps she produced a resident-alien card that had since expired or had been rescinded or a foreign passport combined with some other immigration document that was no longer valid. Furthermore, although Humphries relies on her Social Security card and a Medicare benefits card, neither is sufficient to satisfy the requirement that Humphries produce a primary-listing document in order to be entitled to a nondriver identification card.[3]

Humphries's Jefferson County voter-identification card is also insufficient to establish her identity; a voter-identification card is not included in the primary-listing documents and is "valid only for the purposes of voter identification" pursuant to Ala. Code 1975, § 17-9-30(g). Notably, contrary to Humphries's assertion in her summary-judgment

_____

[3]Notably, certain persons other than United States citizens can qualify for both Social Security and Medicare benefits in certain situations. See, e.g., 42 U.S.C. § 402(t)(4)(B) (permitting certain aliens who have resided in the United States for an aggregate of 10 years or more to collect Social Security benefits despite residing abroad); 42 U.S.C. § 402(y) (precluding an alien who is "not lawfully present" in the United States from receiving Social Security benefits); 42 U.S.C. § 1395o (including within individuals eligible for Medicare "an alien lawfully admitted for permanent residence who has resided in the United States continuously during the 5 years immediately preceding the month in which he applies for enrollment under this part"). See Arthur v. Bolen, 41 So. 3d 745, 750 (Ala. 2010) (stating that courts may take judicial notice of the statutes of the United States).

motion that, to secure her Jefferson County voter-identification card, she was required "to demonstrate citizenship and residence, more than she would need to show to obtain a [nondriver identification card]," an applicant seeking a voter-identification card is not required to present any of the primary-listing documents required under Rule 760-X-1-.20. See Ala. Code 1975, § 17-9-30(k) (requiring that, for the issuance of a voter-identification card, a person produce either a "photo identity document" or a "non-photo identity document … [that] includes both the person's full legal name and date of birth," proof of date of birth, proof of registration to vote, and proof of address). Insofar as Humphries advocates that "[t]here should be nothing to prevent the addition of a voter [identification] card to the list of 'primary documents' required for the issuance of a [nondriver identification card]," we note that the language of Rule 760-X-1-.20 does not include a voter-identification card as a viable primary-listing document and does not allow for an expansion of the list of acceptable documentation. Ex parte Wilbanks Health Care Servs., Inc., 986 So. 2d 422, 427 (Ala. 2007) (quoting Alabama Medicaid Agency v. Beverly Enters., 521 So. 2d 1329, 1332 (Ala. Civ. App. 1987)) (stating that "'language used in an administrative regulation should be

11

given its natural, plain, ordinary, and commonly understood meaning, just as language in a statute'"); Kelly v. Burke, 132 Ala. 235, 243, 31 So. 512, 513 (1902) (stating, in the context of construing a statute, that "neither the history of … statutes nor the mischief intended to be remedied can be looked to for the purpose of qualifying or otherwise defeating their plain mandate"). Even assuming Humphries is correct that the primary-listing documents should be expanded to include a voter-identification card because of the requirements for its issuance, such a decision can be made only by ALEA or the legislature; a court cannot enlarge the language of a regulation under the guise of construing it. See Employees' Ret. Sys. of Alabama v. Head, 369 So. 2d 1227, 1229 (Ala. 1979) (stating that, although a particular result emanating from the language of a statute might seem harsh, "it is not [an appellate] court's function to usurp the role of the legislature and correct defective legislation or amend statutes under the guise of construction"); Turner v. State Employees' Ret. Sys., 485 So. 2d 765, 766 (Ala. Civ. App. 1986) (stating that this court may not "amend statutory regulations under the guise of judicial construction").

Humphries cannot and does not contend that she is entitled to the issuance of a nondriver identification card because she has complied with the requirements of Rule 760-X-1-.20. Instead, she contends that equity compels that she be issued a nondriver identification card despite her admitted inability to satisfy the requirement that she produce one of the nine primary-listing documents required by Rule 760-X-1-.20. She argues:

> "Certainly, bright line rules make life easier for government functionaries who handle multiple applications each day and have limited time to consider each individually. Expecting them to make a value judgment for each is asking a lot and would certainly result in conflicting outcomes. One cannot quibble with those employees who refused to give [Humphries a nondriver identification card]. But courts are different. They are duty-bound to pursue justice. The back of the Supreme Court building is inscribed with the precept, 'Justice, the Guardian of Liberty.' The question this Court should be asking is what is just in these circumstances.

> "....

> "… [I]t is precisely the role of the judiciary, as a co-equal branch of government, to intervene when the legislative or executive branch acts unlawfully or unreasonably. Reason, in a democracy, must take precedence over authority. Here, even [ALEA] implies that the law, as applied to [Humphries], is unreasonable. She is, after all, 'sympathetic.' That is because any rational, reasonable governing body would give her the [nondriver identification card] she is due. The ultimate question here is whether equity and justice will triumph over rigid adherence to an unreasonable administrative regulation

denying [Humphries] that to which she is entitled and which she desperately needs. [ALEA] answers this question in the negative. The [trial] court disagreed and this Court should affirm that decision. With that, [Humphries] turns to equity."

Continuing her emotional appeal, she decries ALEA's "stubborn refusal to issue [her] a [nondriver identification card], even after the [trial] court [issued its judgment]"[4] and characterizes ALEA's "decision to appeal the ruling [as] elevat[ing] slavish adherence to a regulation, unreasonable as applied to [her], over the well-being of a citizen of the State of Alabama."[5] However, Humphries has provided no authority indicating that principles of equity support a judgment requiring ALEA to issue a nondriver identification card to her despite her inability to provide the necessary documentation. Those cases she does cite indicate that, indeed, equitable remedies are available in declaratory-judgment actions, see Gaines v. Smith, 379 So. 3d 411, 417 (Ala. 2022) (describing

---

[4]As previously noted, the trial court granted a stay of the enforcement of the judgment.

[5]To be clear, Humphries did not challenge Rule 760-X-1-.20 as being unconstitutional or allege that it had been applied in a discriminatory manner. Her sole argument is that, based on her situation, ALEA should excuse her noncompliance with the rule and should issue her a nondriver identification card without her having provided the required documentation.

a claim for a declaratory judgment as an equitable claim); Ex parte Jim Dandy Co., 286 Ala. 295, 303, 239 So. 2d 545, 552 (1970) (discussing whether a plaintiff was entitled to have a declaratory-judgment action filed in the equity division transferred to the law division), but those authorities do not support the conclusion that the trial court was free to ignore the requirements of Rule 760-X-1-.20 and, based on some amorphous concept of "equity" that mirrors sympathy, grant equitable relief, i.e., an injunction, requiring ALEA to issue to Humphries a nondriver identification card without her having provided the necessary documentation to entitle her to such. See Head, 369 So. 2d at 1229 (explaining that a harsh result under a statute does not serve as a basis for judicial correction or amendment of the language of a statute); Turner, 485 So. 2d at 766 (same); see also State Farm Fire & Cas. Co. v. Brechbill, 144 So. 3d 248, 263 (Ala. 2013) (Moore, C.J., concurring specially) (quoting Jones v. State, 21 Ala. App. 234, 236, 109 So. 189, 191 (1926)) ("[T]he judiciary must be blind to the competing public-policy interests and conditions of [the parties involved], for '[j]ustice is blind, says the law, and in her judgment must see no man, color, race, or condition.'").

Humphries requested a declaration of her right to the issuance of a nondriver identification card under § 32-6-1(b) and Rule 760-X-1-.20. She admittedly failed to produce one of the nine primary forms of identification required for the issuance of a nondriver identification card. For reasons left unexplained, despite that admitted fact, the trial court apparently concluded that Humphries had demonstrated an entitlement to the issuance of a nondriver identification card and ordered ALEA to issue one to Humphries. Although we are not unsympathetic to Humphries's circumstances, her inability to produce the required documentation precludes any entitlement to a nondriver identification card under Alabama law. We therefore reverse the judgment of the trial court and remand this cause for entry of a judgment consistent with this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Moore, P.J., and Hanson, Fridy, and Lewis, JJ., concur.